The Auditor, *for use of the State, against* Woodruff *and others.*

## Error *to Pulaski Circuit Court.*

Although the statute requires the official bond of the State Treasurer to be approved by the Governor, and that approval to be endorsed thereon, before the commission issues, or the person qualifies, or proceeds to discharge the duties of his office; yet the failure of the Governor to endorse such approval, or to approve the bond, neither creates or destroys, increases or diminishes the obligation of the contract, which, if in every other respect legally executed, is perfect.

The statute, by implication, imposes on the person whose bond is required to be thus approved, the duty of submitting it to the Executive for his approval.

The design of the Legislature, in requiring the bond to be approved by the Governor, was to provide for the public, as well as individuals, an undoubted assurance that the security is perfect, and amply sufficient to indemnify them for any loss or injury which they may sustain by failure of the officer to perform his official duties.

But the failure of the Governor to approve the bond, neither discharges the officer nor his securities. The approval is not a condition precedent, until the happening of which, the obligation of the contract remains, as it were, suspended, so that it does not attach upon the obligors. The bond became perfect by execution and delivery, as at common law.

Nor does the failure to approve operate as a defeasance or release, whereby the obligation of the contract is *ipso facto* dissolved.

In an action on such a bond, therefore, it is not necessary to aver, that it was approved by the Governor.

Where in an action of debt upon an official bond, profert is made of the *original*, and upon oyer a *copy* is filed, the defendants might have refused to accept a copy as oyer, or dispense with the production of the original, or to plead until it was produced.

But, by pleading to the action, (and a demurrer is regarded as a plea to the action), every objection to the oyer, as that it has not been granted at all, or that it has been irregularly, improperly, or insufficiently granted, is waived.

It is therefore no objection, on demurrer, that *profert* was made of the original, and oyer granted by filing a copy.

It is no objection on demurrer, that a joint bond is declared on as joint and several, for by statute, all joint bonds may be sued in the same manner as if they were joint and several.

The Legislature had the power to authorize the Auditor to sue on official bonds executed to the Governor and his successors; and the Auditor had the power on the 29th of January, A. D. 1839, to sue for the use of the state on such a bond.

In an action upon a bond, it is not necessary to aver, that the bond was *delivered.* The allegation that it is the bond of the defendant, implies a delivery.

Under the Territorial Statute, the party demurring could avail himself of any defects in the pleading demurred to, though specially set down as causes of demurrer.

When, therefore, a case comes into this court, decided on demurrer in the court below, under the Territorial Statute, if the court below sustained the demurrer, and there is any material defect, fatal on demurrer, which was not assigned among the special causes of demurrer, the decision will be sustained, though the special causes assigned were insufficient.

Oyer granted is a part of the previous pleading, and the plaintiff is bound by it as long as it remains of record in the case, even though it may have been improperly or unnecessarily granted; and the defendants can avail themselves of any defect or objection manifest upon, or produced by it.

Where, therefore, in debt on bond, the copy of the bond, given on oyer, as it appears in the transcript of the record, shows a contract simply signed with the names of the defendants, but without any seal, or scrawl by way of seal, affixed to them, though over the names the words " witness our hands and seals," are used, the instrument given on oyer appears not to be a bond, and is variant from that sued on; and this is such a variance as is fatal on demurrer, or on error.

The court can know nothing except what appears on record, nor can they presume a diminution in such a case, and award a certiorari to supply it.

A certiorari is sometimes awarded by the court *ex-officio,* for their own satisfaction, or to enable them to *affirm;* but never with a view of supplying matter to enable them to *reverse* the judgment, nor is it ever done, unless the diminution appears from an inspection of the transcript itself.

This was an action of debt, in the name of *Elias N. Conway, Auditor of Public Accounts,* for the use of the state, against *William E. Woodruff, Chester Ashley, Edward Cross, Thomas Thorn, James De Baun, Jacob Reider, Sam C. Roane,* and *Peter T. Crutchfield,* for the penalty of the official bond of Woodruff, as State Treasurer, given to *James S. Conway, Governor, and his successors,* in the sum of three hundred thousand dollars.    The substance of the declaration is stated in the opinion of the court.

The action was brought under the act of November 8th, 1836, by which the Auditor is authorized to sue " for any demand which the people of the state may have a right to claim."    *Pamp. Acts, p.* 195. The writ issued January 29, 1839, and was served on all the defendants except *Cross* and *Roane.*    At March term, 1839, the defendants craved oyer, which is stated in the record to have been " granted by filing the original," of which profert is made in the declaration.    But at the same term that order was set aside, and oyer granted by filing a copy of the original.

On the 13th of March the defendants filed their demurrer to the declaration, and assigned as causes of demurrer:

*First,* that the copy of the bond filed did not show that the bond had been approved by the Governor as required by law;

*Second,* that profert is made of the *original,* and a copy is given on oyer;

*Third,* that the paper filed as oyer is not the *original,* nor a *certified* copy;

*Fourth,* that the declaration states that the defendants *jointly and severally* made the bond, whereas it is not joint and several;

*Fifth,* that the Auditor could not sue on the bond;

*Sixth,* that there is no allegation that the bond was *delivered.*

Which demurrer was sustained, and final judgment rendered against the plaintiff, to which he sued his writ of error.

The case was argued for the state by F. W. TRAPNALL, Esq., her attorney *pro tem.*

ASHLEY & WATKINS, *contra:*

There was a general demurrer to the declaration in this case, in the court below, and the causes of demurrer were specially set down, and which were intended to operate, not as a special demurrer, technically speaking, but a written argument of the case for the judge. Those grounds of demurrer are spread out upon the record, and will answer the same purpose in the court here.

By our statute of the 19th January, 1816, and which was applicable to this case, we have adopted the common law and statutes of England, of a general nature, and not inconsistent with our laws, passed prior to the 4th year of Jac. I. *Ark. Dig. p.* 130.

By statute of the 3d July, 1807, we have substantially re-enacted the statutes of 27th Eliz., C. 5, and the 4th Anne, C. 16, in regard to special demurrers, in reference to which, Mr. Serjeant Stephen, in his treatise on pleading, p. 143, and app. N. 42, says, that the general effect of those statutes, relative to special demurrer, is well expressed by Lord Hobart, who says, in reference to the stat. 27th Eliz., C. 5: " The moderation of this statute is such, that it does not utterly reject *form,* for that were a dishonor to the law, and to make it in effect no act; but requires only that it be *discovered,* and not used as a secret snare to entrap. And that discovery must not be confused and obscure, but special; therefore, it is not sufficient to say that the demurrer is *per form,* but he must express what is the *point and specialty* of form that he requires."

But, by our statute of the 7th November, 1831, *Ark. Dig., p.* 348, it is enacted, that no special demurrer shall be filed in any civil cause hereafter to be brought in this Territory, (State,) and no objections to mere matter of form shall be taken to any declaration or plea.

Upon these statutes, two questions, involving the decision of this case, naturally present themselves to the court.

First, where the court below suffer a special demurrer to be filed, (supposing the demurrer in this case to be a special one, in the strictest sense of the term), and where the party takes issue, and goes to trial upon it in the court below, is he not concluded by his own pleading, and estopped to take any advantage of it on error?

Another question would be, what is to be the construction of these statutes, first by the term " special demurrer," as used in the act of November, 1831? Are we to infer that no special demurrer shall be allowed, which would have been cause of special demurrer at the common law, prior to the 4th year of Jac. I? If so, according to the authorities, every ground of demurrer, except for duplicity, would be general, and reached by the demurrer in this case. Second, does the statute, by that term, mean utterly to reject matters of form? Surely not. Because it is one of the fundamental rules of pleading, " that the law requires in every plea, two things, the one, that it be in matter sufficient, the other, that it be deduced and expressed, according to the forms of law; and if either the one or the other of these be wanting, it is cause of special demurrer." *Bac. Ab. Pleas and Plead., p.* 322; *Hobart* 164. Such a vandalism would mar the beauty and science of pleading, and destroy the happy medium established by the statutes of Elizabeth and Anne, between technicality on the one hand, and irregularity and looseness on the other; and it is as true as it hath been often observed, with regard to the usages and customs of society, but more especially applicable to the science of pleading, that matter of substance is contained, though sometimes covered up and concealed, in matter of form; and where the forms are broken down and abolished, the substance is but too apt to be destroyed with it.

But if by the term special demurrer, the statute intended to exclude all demurrers *for mere matters of form,* as understood by the later English authorities, based upon the statutes of Elizabeth and Anne, then it only remains for the court to look into the several grounds disclosed by the record in this case, and *if any one of these grounds be matter of substance, it was reached by the general demurrer in this case, and the judgment of the court below is not erroneous.*

RINGO, *Chief Justice*, delivered the opinion of the Court:

This is an action of debt, founded on the official bond of the defendant, William E. Woodruff, as the Treasurer of this State, and his securities, against all of whom the plaintiff in error, who was also plaintiff in the Circuit Court, in his official character as Auditor of Public Accounts, declares for the penalty of said bond, with a profert, but without setting forth the conditions thereof; and describes the same as a writing obligatory of the defendants, made by them on the 27th day of October, 1836, bearing date on the same day, and " sealed with their, and each of their, respective seals," whereby they " acknowledge themselves jointly and severally held and firmly, bound unto James S. Conway, then and now Governor of the State of Arkansas, and his successors in office, in the just and full sum of three hundred thousand dollars, above demanded, to be paid unto the said James S. Conway, Governor of the State of Arkansas, and his successors in office; which said writing obligatory was, and still is, subject to certain conditions thereunder written." The plaintiff avers, " that he is Auditor of the State of Arkansas, duly elected, commissioned, and qualified, as the law prescribes, by means whereof, and by force of the statute in such case made and provided, the right of action hath accrued to himself, the said Elias N. Conway, Auditor of Public Accounts of the State of Arkansas, who sues for the use and benefit of the State of Arkansas, as Auditor, as aforesaid, to have, demand of, and sue the said defendants, for the use and benefit of the State of Arkansas, for the sum of three hundred thousand dollars, above demanded;" and assigns as a breach, that the " defendants did not, nor did either of them, pay unto the said James S. Conway, who is Governor of the State of Arkansas, the said sum of three hundred thousand dollars, demanded as aforesaid, or any part thereof; nor have they, the said defendants, or either of them, although often requested so to do, paid unto the said Elias N. Conway, Auditor of Public Accounts, who sues for the use and benefit of the State of Arkansas, as Auditor as aforesaid, since the right of action (by force of the statute in such case made and provided), hath accrued, as aforesaid, said sum of three hundred thousand dollars, demanded as aforesaid, or any part thereof. But this to do, they, the

said defendants, have, and each of them hath, hitherto wholly re-
fused, and still doth refuse, and fail to pay the said sum of three
hundred thousand dollars demanded as aforesaid, or any part thereof,
to the damage of the said plaintiff, for the use and benefit of the State
of Arkansas, five thousand dollars; and, therefore, for the use and
benefit of the State of Arkansas aforesaid, he brings his suit, &c."

All of the defendants named in the declaration, except Cross and
Roane, who were not found, and did not appear, entered their ap-
pearance; and at the term at which the writ was returnable, prayed
oyer of the writing obligatory mentioned in the declaration which
was granted, as appears by the record, first, by filing the original
bond. But this grant of oyer was afterwards set aside on motion, and
oyer granted, " by filing a copy of the original bond," to which there
does not appear to have been any objection made; and the copy so
filed, containing the condition thereunder written, is contained in the
transcript of the record returned to this court with the writ of error.
Oyer being thus granted, the defendant who had been thus served
with process, and had appeared, filed a demurrer to the declaration,
to which the plaintiff filed a joinder. Upon which, final judgment
was given against the plaintiff, on the 18th day of March, 1839, to
reverse which, he has brought the case before this court by writ of
error.

The propriety of the judgment given upon the demurrer, is the
only question presented by the record and assignment of errors, to
which there is a joinder. In the demurrer, several causes of de-
murrer are specially stated, which have been urged by the defendants
in error upon the argument in this court, and are relied upon as
justifying the judgment thereupon given in their favor. They are in
substance: 1st, that it does not appear that the Governor's approval
of the bond is endorsed thereon, as is required by law; 2d, that pro-
fert is made of the original bond, whereas it is required by law to be
delivered to the Secretary of State, and to be by him filed among
the records of his office; 3d, that the oyer granted is not of the
original writing obligatory, mentioned in the declaration, or a certi-
fied copy thereof; 4th, the obligation sued on, is described as being
joint and several, and the writing given on oyer is joint, but not

several; 5th, upon an obligation to the Governor, and his successors in office, suit should be instituted in the name of the Governor; and 6th, there is no allegation that the defendants delivered the writing obligatory sued on to the Governor, or the plaintiff.

On the part of the plaintiffs it is insisted, that neither of the grounds of demurrer specially assigned, are available on general demurrer at common law; and under our statute, no special demurrer can be filed, or causes which are only grounds of special demurrer at common law be regarded. The omission of the averment, that the Governor has approved the bond and endorsed his approval upon it, is not, in our opinion, fatal to the declaration, for *ex vi termini* it either creates or destroys, increases or diminishes the obligation of the contract, which, if it has been in every other respect legally executed, is perfect. The statute requiring the approval of the Governor to be endorsed on the bond, implicitly imposes on the person whose bond is required to be thus approved, the duty of submitting it to the Executive for his approval, and casts upon this high functionary the duty of exercising his judgment as to its sufficiency, in form and substance, as well as the ability of the obligors to pay the amount, for the payment of which, they have thereby stipulated and bound themselves, and of endorsing his opinion thereupon, whether he approves the same. The design of this provision was, as we apprehend, to provide for the public, as well as individuals, on undoubted assurance that the security furnished by the officer, for the faithful performance of his official duties, is perfect, and amply sufficient to indemnify them for any loss or injury which they may suffer, by reason of any failure on his part, to perform his official duties, as enjoined and prescribed by law; but if any person, notwithstanding a dereliction of the duty in this particular, should obtain a commission from the Executive, or qualify in other respects, and proceed to act, and assume to himself the authority and privileges appertaining to such office, although he might and probably would subject himself thereby to a removal from office, if the fault was his, yet to admit the principle that he, or his sureties, are discharged, or never were liable on this contract, for any official non-feasance, mis-feasance, or mal-feasance, of which he is guilty, whereby the public or any individual is injured, would, in our

opinion, be against every principle of reason, of sound morals, and of legal justice, as well as in violation of the salutary and universally admitted principle of the common law, that no man shall be suffered to take advantage of his own wrong; and notwithstanding the statute requires the bond to be approved, and the approval endorsed thereon, before the commission issues, or the person qualifies, or proceeds to discharge the duties of the office, it does not, in our opinion, create a condition precedent, until the happening of which the obligation of the contract remains, as it were, suspended, and does not attach upon the obligors. Such construction would be opposed to the principle of the common law, which holds the obligation perfect so soon as it is executed and delivered; and, in our judgment, this provision of the statute leaves these principles of the common law unchanged. Nor does the law imply, that the omission or refusal of the Governor to endorse such approval on the bond, shall operate as a defeasance or release, whereby the obligation of the contract is *ipso facto* dissolved. Such doubtless was not the intention of the law, nor are such consequences comprehended within its legitimate operation. It was, as before remarked, intended not to lessen or destroy the security of the public or individuals, in respect of any act of the officer done or omitted, by which they are or may be injured, but to guarantee to them a more perfect and ample security; and here we may be permitted to remark, that the construction which we have considered it our duty to give to this provision of the statute, does not impose any hardship on the officer or his security, as they never can be prejudiced thereby, if he does not, in violation of the law, and contrary to his duty, take upon himself the execution of the duties of the office, and therein do something prohibited, or omit to do something enjoined, by law, while, on the contrary, the interests of individuals and of the public are preserved and enforced; and we conceive a principle so immoral and so unjust, as to suffer the officer and his securities to escape merited responsibility incurred in the course of his official business, simply because he has, in violation of his duty, omitted to obtain the necessary endorsement of the Governor's approval on the bond, when he has received the full consideration for which the obligation was given, in the enjoyment of the office, and the powers,

principles, perquisites, and honors, incident thereto, cannot be maintained. If it could, the person who has thus illegally intruded himself into office, would be virtually justified in sporting away the sacred rights of others. Therefore, in our opinion, no averment that the Governor had endorsed his approval on the bond, is necessary. The second and third grounds of demurrer specially set forth, are, in our opinion, clearly untenable; for, although the plaintiff, by making profert of the original writing obligatory, instead of excusing the profert thereof, by showing that the bond was on file of record in the office of the Secretary of State, and therefore not in his possession, or subject to his control, so that he could not produce it in court; or making profert of an attested copy thereof, as he might and perhaps ought to have done, gave to his adversaries an advantage, of which they could have availed themselves by refusing to accept a copy as oyer, or dispense with the production of the original, or plead to the action until it was produced, on their prayer of oyer; yet we are unable to discover the principle upon which the profert can be considered as a defect in the proceedings, of which they can take advantage upon their demurrer to the declaration, which admits the facts as stated therein, so far as they are well pleaded; and certainly pleading the deed with a profert, in strict technical form, notwithstanding it may not be in the power of the plaintiff to produce it, as he is bound to do, when it is so pleaded, cannot, by any rule of law or practice known to us, be considered as prejudicial to, or in any manner endangering the rights of, the defendants, and, therefore, it is not an objection of which they can avail themselves by demurrer; and there is no rule of law or practice more clearly and fully established by authority, than that by pleading to the action, (and a demurrer is regarded as a plea to the action), without oyer, every objection to the oyer, as that it has not been granted at all, or has been irregularly, improperly, or insufficiently granted, is waived; and, therefore, the second and third special causes stated as grounds of demurrer are insufficient, and do not in law constitute such an objection to the proceedings, as can be taken advantage of by demurrer to the declaration.

Under the provisions of the statute passed 1st of January, 1816, *Ark. Dig., page* 312, which were in force when this suit was instituted,

11

and also at the date of the obligation sued on, suits may be brought and prosecuted on joint obligations, in the same manner as if such obligations were joint and several; and, therefore, the fourth cause specially assigned as ground of demurrer, is untenable.

The fifth objection specially stated, rests upon the assumption that the suit must be prosecuted in the name of the Governor, to whom, and his successors in office, the obligation is expressly taken and made payable; instead of the Auditor of Public Accounts, in whose name the suit is instituted. According to the principles of the common law, every action at law must be prosecuted in the name of the party in whom the legal interest in the contract is vested; but this, like every other principle of the common law, is under the control of the Legis-lative authority, and may be modified, changed, or abrogated, by the Legislature, at will, unless their power is restrained by the constitu-tion. In the exercise of these constitutional powers, the Legislature of this State, by statute approved November 8th, 1836, has author-ized suit to be brought " in the name of the Auditor of Public Accounts for the State of Arkansas, in the Circuit Court, for any demand which the people of the State may have a right to claim."

This amounts to nothing more than a modification of the legal remedy by suit, in cases where the money claimed would, if recovered, belong to the State. It does not in the slightest possible degree im-pair, or in any way affect the legal obligation of the contract, or the respective rights or liabilities of the parties to it. The remedy only is modified, and so far as we know, the authority of the Legislature to prescribe the form and direct the order of the proceeding in the courts of justice, under the Constitution of the United States, or of any State, has never been questioned or denied; provided, always, that the obligation of the contract is not thereby impaired. In the case before us, the averments in the declaration show conclusively, that the suit is by, and in the name of, the Auditor of Public Accounts, for the State of Arkansas, in his official character, and not in his private or individual right for a demand claimed for the State; and, therefore, the fifth objection is not, in our opinion, fatal to the action. The sixth objection is futile. The plaintiff in this declaration, ex-pressly charges the writing sued on to be the writing obligatory of the

The Auditor *against* Woodruff *and others.*

defendants named in the declaration. Technically speaking, no instrument in writing ever becomes the deed, obligation, bond, or writing obligatory of the obligor or maker, until he delivers it as such; and, therefore, the allegation, that the instrument sued on is the writing obligatory of the defendants, implies the delivery, and is regarded by the law as equivalent to an express averment of the delivery thereof by the defendants, and it is not usual in pleading such instruments, to allege the delivery by a distinct averment.

Having thus briefly noticed and disposed of the causes of demurrer specially assigned, it becomes our duty to consider whether there are other defects, for which the plaintiff's pleading should be adjudged insufficient on the demurrer thereto; and here we will remark, that the judgment upon the demurrer was given prior to the taking effect of the Revised Statutes, and the propriety thereof must therefore be determined by the pre-existing laws, which were in force at the date of the judgment, and permitted the party demurring to avail himself of any objection to his adversary's pleading, which would be fatal to *it* on general demurrer at common law, though not set down specially as the ground of demurrer; and this was the uniform practice, notwithstanding the causes specially assigned were insufficient. And, therefore, if there is any fatal defect apparent upon the face of the proceeding, which would be reached by general demurrer, and this cannot be regarded as any thing different, because the law then in force prohibited the filing of any special demurrer, the judgment must be affirmed.

The record shows that oyer was granted by filing a copy of the original bond; and the oyer thus granted is to be regarded as a part of the previous pleading, and the plaintiff is bound by it as long as it remains of record in the case, and even though it may have been unnecessarily or improperly granted, and the defendants are at liberty to avail themselves of any defect or objection manifest upon or produced by it.

In this case, the copy filed as oyer, as it appears in the transcript of the record certified to this court on the writ of error, shows a contract simply signed with the names of the defendants mentioned in the declaration, but without any seal, or scrawl by way of seal, affixed

CASES IN THE SUPREME COURT

thereto, which cannot, therefore, be considered a writing obligatory; and for this reason, it appears to be a different instrument from that sued on and described in the declaration; and this is a material variance, of which advantage may be taken by general demurrer. Nor is this discrepancy in the least obviated or aided by this statement over the signatures of the defendants, " witness our hands and seals," because it is the act of the party affixing the seal, or scrawl by way of seal, and not the assertion that it is affixed thereto, (which appears upon an inspection of the writing to be untrue), that characterizes the instrument, and constitutes it a writing obligatory or deed.

This discrepancy may have originated with the copyist, who transcribed from the original the copy given as oyer, or the clerk who transcribed the same into the transcript of the copy before us. But however this may be, we cannot judicially know, nor do we in fact know any thing about it more than appears by this transcript, in which no diminution has been suggested by either party, and there is no law or rule of practice to justify us in presuming a diminution, and awarding a certiorari to supply it. A certiorari is sometimes awarded by the court ex officio for their own satisfaction, or to enable them to affirm, but so far as we know, it has never been done with a view to supply matter, which would enable them to reverse the judgment; and it is never so awarded by the court, unless the diminution appears from an inspection of the transcript itself, which is not the case here. We are therefore bound to regard the transcript before us as perfect, and adjudicate the case upon the record as shown by it, upon which it appears manifestly, that there is no error in the judgment. Wherefore, the judgment of the Circuit Court of Pulaski county, given in this case upon the demurrer of the defendants to the declaration of the plaintiff, ought to be, and is hereby, in all things, affirmed, with costs.