## THE PEOPLE v. EDWARDS et al.

Where there are amendments to a proposed statement on appeal, the draft proposed, and the amendments allowed, should be incorporated into one document, as in their separate form they cannot be regarded as any part of the record.

No averment of notice to the defendant is requisite in the complaint where the matters assigned as breaches lie as much in the knowledge of the one party as of the other.

The defect in the approval of a sheriff's bond cannot be set up as a defence in an action on said bond against the sureties. The object of the law in requiring the approval, is to insure greater security to the public, and it does not lie in the obligors to object that their bond was accepted without proper examination into its sufficiency by the officers of the law.

The offices of sheriff and tax-collector are as distinct as though filled by different persons. The duties and obligations of the one are entirely independent of the duties and obligations of the other. They are not so blended that the bond executed for the faithful performance of the duties appertaining to the one would embrace, in the absence of the statute, the obligations belonging to the other.

The eighth section of the Act Concerning Official Bonds, which provides that every such bond shall be obligatory upon the principal and sureties therein, for the faithful discharge of all duties which may be required of the officer by any law enacted subsequently, applies only to the duties properly appertaining to his office as such, and not to new duties belonging to a distinct office, with the execution of which he may be charged.

The duties of sheriff, as such, are more or less connected with the administration of justice; they have no relation to the collection of the revenue.

The Revenue Act of 1854 made the sheriff ex officio tax-collector, and provided that he should be liable on his bond for the discharge of his duties in the collection of taxes. No other bond is required by law of the sheriff, except when he acts as collector of foreign miners' licenses: Held, that the bond in suit, entered into in 1856, must be deemed to have been executed in view of the provisions of the Revenue Act, and that all delinquencies in the collection of taxes, except foreign miners' licenses, are covered by the bond.

The defects in official bonds, which are cured upon their suggestion in the complaint, in an action upon such bonds, under the eleventh section of the "Act concerning the Official Bonds of Officers," are omissions which, but for the statute, would operate to discharge the obligors.

Where the obligors, in a sheriff's bond, bind themselves, jointly and severally, in specific sums designated, they may all be joined in the same action, but separate judgments are required.

APPEAL from the District Court of the Fourteenth Judicial District, County of Nevada.

A statement of the facts appears in the opinion of the Court.

McConnell & Niles for Appellants.

There are two questions in the case which strike at the very foundation of the present action, and which, if decided in accordance with our views, must dispose of the case. By referring to the bond, which was executed in 1856, the Court will observe that after going on and stating in the premises the names of the parties bound, and the amount of the penalty, it proceeds as follows—viz. : "to be by us, our heirs, executors, and administraators, well and truly paid in the proportion as follows : J. M. Fonse in the sum of five thousand dollars; Edward McLaughlin, in the sum of four thousand dollars; Charles R. Edwards, in the sum of four thousand dollars; C. K. Hotaling, in the sum of five thousand dollars; James H. Wilcox, in the sum of four thousand dollars,'" etc. We filed a demurrer to the complaint, because of the character of the bond, which the Court overruled.

The demurrer involved the objection to the bond above mentioned, but upon consideration, we think perhaps the objection, by way of demurrer, is not well taken, but that the objection is more properly taken to the judgment.

The bond is a good enough bond, doubtless, when properly construed, but we say that the referee has construed it erroneously.

The Court will observe that the judgment reported by the referee against the defendants is a "joint and several" judgment.

Now, it is obvious that the defendants cannot be bound "jointly and severally," for the whole amount recorded by the judgment, unless they were bound jointly and severally by the bond, and the question is, are they so bound by the bond in this case?

We think not, and we think that the bond, though not joint and several, is according to law.

We concede to the respondents the full force of the argument, predicated upon the statutory requirements in official bonds.

In a case of doubtful interpretation, we believe a statute provision might with propriety be invoked to aid in construing an instrument made in pursuance of the same statute.

But we cannot assent to the monstrous doctrine, that the manifest and ordinary signification of words and sentences in an instrument must yield to a forced and violent construction, because the statute in pursuance of which the instrument was executed, requires it to contain certain stipulations, or to be of a certain form.

The law requires official bonds to be "joint and several," therefore this bond is joint and several.

This is their argument, an argument which sounds sufficiently foolish when we recollect how many of the law's requirements are daily disregarded by almost all classes of men.

The plaintiffs evidently regarded the clause of the bond referred to as constituting a defect, because they have suggested it as a defect in their complaint, in accordance with the eleventh

section of the "Act Concerning Official Bonds." Wood's Digest, p. 278, Art. 215. And seek by means of this instrument of judicial charity to cover up and hide the defect.

But we say that it is not a defect, but an additional and very important clause, limiting and controlling the individual liability of each of the sureties. The word "defect" implies an omission, not an addition.

A "joint and several" liability, or, as it is frequently termed, a liability *in solido*, is when two or more persons undertake to pay " one and the same sum to one and the same person." Burge on Suretyship, p. 373. Again : " the whole sum must be owing by each and every of the debtors." Ibid.

A joint and several liability, means no more than that each of the obligors is bound for the entire debt or duty, and the obligee may sue one or all, at his option, and recover.

" The effect," says Burge, " of an obligation *in solido*, is to entitle the creditor to recover the whole debt from either of the debtors whom he pleases to select; this is a necessary consequence of each of the debtors being a debtor for the whole." Ibid., p. 406. Again : it is an essential rule of the common as well as of the civil law, that an obligation *in solido*, is not to be presumed, it must be expressed.

The language of the standard authority so frequently cited by us, is, " the obligation is not to be presumed to be *in solido*, but it ought to be expressed; and if it be not, when several persons have contracted an obligation in favor of another, each is presumed to have contracted as to his own part only. Ibid., p. 403, 404. Here, then, we oppose to a presumption arising from statute law, a presumption founded in general law, and the latter must possess as great force with the Court as the former, since a statute requirement is no more the law of the land than the common law, while the latter remains in existence.

From the foregoing authorities and definitions, it is evident, we think, that the defendants were not jointly and severally bound.

A and B agree by the same instrument jointly and severally to pay C five thousand dollars. Here the obligation is *in solido*, because either of them is bound for the whole debt.

But suppose A promises to pay three thousand dollars, and B two thousand, or suppose each undertake to pay one-half of the whole, then the obligation is separate, or there are, in fact, two distinct obligations, although there is but one instrument.

This is precisely the condition of the case at bar.

The entire penalty of the bond is $24,000, (though the law requires it to be $25,000,) and each of the bondsmen has expressly stipulated the part for which he will be responsible.

So distinctly have the sureties indicated and marked out, as it were, the limits of their respective liability, that no room what-

ever is left for the operation of legal presumptions; and if presumptions could prevail, we have shown they are in our favor.

We will here call the attention of the Court to the language of the bond referred to. We do so because the learned Judge who overruled our motion for a new trial, stated a theory in regard to that clause, which, though plausible, we deem entirely unfounded.

While the motion was being argued he let drop the suggestion that the clause in question might perhaps have been inserted for the purpose of regulating the contribution between the sureties themselves, and not as a part of the contract between the obligors and the State.

Now the phraseology of the bond completely neutralize this view.

After stating the names of the parties and the amount of the penalty, etc., the bond goes on to say : "to be by us, our heirs, etc., well and truly paid in the following proportions, etc."

What is to be paid in the following proportions? Why, the penalty of course; and as the penalty is to be paid to the State, it follows that it must be in the mode of payment specified.

It may be asked, what are our views in relation to the proper form of the judgment on a bond like the present.

Inasmuch as we regard it as a thing settled, that the bondsmen have obligated themselves severally, or more properly speaking, separately—and not jointly and severally—the judgment, in our opinion, ought also to be several or separate. That is, the judgment ought really to have as many distinct parts as there are bondsmen, and it should be against each, for a sum proportioned to the sum for which he has bound himself.

If the sum found due, for instance, was for the entire penalty, then the judgment against each surety should be for the full amount in which he has become obligated.

For instance, against Hotaling, the judgment would be for $5,000; against Wilcox, $4,000, and so on.

If the whole judgment, as in this case, is for a sum less than the penalty, then the judgment against each bondsman should bear the same proportion to the entire amount of the judgment against them all as the sum for which he became bound was to the entire penalty. That is, if one of the sureties had bound himself for one-fourth of the entire penalty, then judgment should be rendered against him for one-fourth of the entire amount found due the plantiffs, etc.

Of course our view involves the consequence that each surety, being bound for his principal and himself only in a fixed sum, he cannot be compelled to pay any more than that sum, though one or more of his co-sureties be dead.

As in this case, we do not think the defendants can be held re-

sponsible for that portion of the penalty which J. M. Fonse, (deceased,) undertook to pay.

Nor can the right of distribution exist among them, for that is an incident to *in solido* obligations only. It (the right to contribution,) being so manifestly absent in this case, even according to Judge Searls' opinion, is the very strongest possible proof of the correctness of our views. Burge on Suretyship, pp. 381, 382, 384.

*Meredith & Hawley* for Respondents.

The bond is one executed and given under the "Act Concerning the Official Bonds of Officers," passed Feb. 9, 1850. Wood's Dig., p. 77. It is a statutory bond, and its sufficiency or insufficiency must be determined by the provisions of that law or act. There is no other statute of this State upon the subject of official bonds, which, by any rational rule of construction can affect the obligation of the bond sued upon. The act of April, 1857, p. 80, Wood's Dig., passed nine months after the execution of this bond, cannot be invoked on the one side or the other of this case, for the reason, that by the terms of the act itself, (§ 1,) its operation is confined to official bonds required subsequent to its passage.

The doctrine has been fully recognized by this Court, that statutory bonds must be construed with reference to the statute under which the bonds are given, and indeed so intimate is the connection between the instrument and the act providing for its execution, that the law becomes a part of the contract, and limits and controls the obligation arising upon its execution.

In the language of Chief Justice Murray, "the principle is now familiar, that where parties contract in respect to law, the law itself becomes a part of the contract and they are bound thereby." Matoon et al. v. Eder et al., 6 Cal. R., 57.

This decision was in an action brought upon a bail-bond, or undertaking in arrest-process, under our civil practice, and is clearly in point.

In the language of Justice Burnett, speaking of the delivery of specific personal property by the sheriff to the complainant suing out process, "it is a condition precedent, apparent upon the instrument, taken and construed with reference to the law under which it was given and which forms a part of the undertaking itself." Nickerson v. Chatterton et al., 7 Cal. R., 568.

The laws in force at the time of making a contract, and those under which it is made, form a portion of the essence of the contract, which must be considered as entered into with reference to those laws and by them be construed. Reynolds v. Hall et al., 1 Scamm. R., 38; Cox & Dick v. U. States, 6 Peters' R., 172; Duncan's Heirs v. U. States, 7 Peters' R., 435.

The bond sued upon is a joint and several bond for the full

amount of $24,000, and that portion of the same which apportions the obligation among the obligors must be deemed totally inoperative as to the State, and in the light of a contract exclusively between the obligors.    The first portion of the bond itself, as also the sixth section of the Act Concerning Official Bonds, above referred to, clearly makes defendants jointly and severally bound in the full amount.    Other sections of the same law unite to render the liability one of that character.    All defects in the substantial matter, condition, or conditions, or in the approval of an official bond, are cured and remedied by section eleven of that act upon the formal suggestion of such defects and omissions by the plaintiffs.

This is not a new, nor with us an original, construction of the eleventh section referred to, but it is the judgment of this Court.

" The eleventh section of the act concerning the bonds of officers, provides against the invalidity of the bond even where it does not contain "the substantial matter required by law."    And the right to recover upon such bonds is not limited to any particular class of cases, but is co-extensive with the right to recover upon a regular statutory bond."    Loyd Tevis *v.* Randall et al., 6 Cal. Rep., 632.

We conclude that if the bond sued on was the official bond of Wright, sheriff, that then the sureties, notwithstanding some defects and omissions in the phraseology of the instrument, assumed the obligation required by the statute to enable such officer to act in that capacity.

FIELD, J., delivered the opinion of the Court—BURNETT, J., concurring.

The papers embraced in the transcript, purporting to be a statement, are liable to the objection taken in Marlow *v.* Marsh. The draft proposed, and the amendments to it, are not incorporated into one document, and in their separate form cannot be regarded as any part of the record.    The exceptions to the evidence are not, therefore, before us, and the appeal must be determined upon the sufficiency of the demurrer, and the objections to the form of the judgment.

The action is brought against the sureties upon the official bond of Wright, formerly Sheriff of Nevada county.    The bond was executed for the faithful discharge of his duties as sheriff, and the breaches assigned consist in his failure to pay over moneys collected by him as taxes, in his *ex officio* capacity of collector, and his neglect to furnish, under oath, the account of his transactions as such collector, on the third Monday of October, 1856, to the treasurer and auditor of the county, as required by statute. The complaint contains no averment of notice to the defendants of the default of the sheriff, and the only objections meriting

consideration raised by the demurrer are, the want of this aver-ment of notice, and that the bond was not properly and legally approved, and does not cover the delinquencies of the officer as tax-collector.

No averment of notice is requisite where the matters assigned as breaches lie as much in the knowledge of the one party as of the other.    (Chitty's Plead., 328.)

The defect in the approval of the bond, if any existed, could not avail the defendants.    The object of requiring the approval is to insure greater security to the public, and it does not lie in the defendants to object that their bond was accepted without proper examination into its sufficiency by the officers of the law.

The offices of sheriff and tax-collector are as distinct as though filled by different persons.    The duties and obligations of the one are entirely independent of the duties and obligations of the other.    The case of Merrill v. Gorham (6 Cal., 41) only decides that there is no constitutional inhibition to the exercise of the two offices by the same person.    The offices are not so blended that the bond executed for the faithful performance of the duties appertaining to the one would embrace, in the absence of the statute, the obligations belonging to the other.    The eighth sec-tion of the Act Concerning Official Bonds, which provides that every such bond shall be obligatory upon the principal and sure-ties therein, for the faithful discharge of all duties which may be required of the officer by any law enacted subsequently, applies only to duties properly appertaining to his office, as such, and not to new duties belonging to a distinct office, with the execution of which he may be charged.    The duties of sheriff, as such, relate to the execution of the orders, judgments, and process of the Courts ; the preservation of the peace; the arrest and detention of persons charged with the commission of a public offence; the service of papers in actions, and the like ; they are more or less directly connected with the administration of justice ; they have no relation to the collection of revenue.    The difficulty, however, with the demurrer is the fact that the Revenue Act of 1854, by virtue of which the sheriff is made ex officio tax-collector, pro-vides that he shall be liable on his bond for the discharge of his duties in the collection of taxes, and does not require the execu-tion of any new bond; nor is any other bond required than the one executed by him as sheriff, except when he acts as collector of taxes for foreign miners' licenses.    The bond in suit must be deemed to have been executed in view of the provisions of the Revenue Act.    For moneys collected for foreign miners' licences, and not paid over, the defendants are not responsible; but all delinquencies in the collection of other taxes are covered by the bond in suit.    The demurrer was properly overruled.

The objection to the judgment arises from the form of the bond upon which the suit is brought.    The judgment is against all the

defendants, jointly, for a sum exceeding $6,000. The bond is in the penal sum of $24,000, for the payment of which the obligors bind themselves, jointly and severally, in certain proportions; two of them each in the sum of five thousand dollars, and four of them each in the sum of four thousand dollars. It was executed previous to the passage of the act of 1857, authorizing official bonds in this form, and, of course, must be construed with reference to the statute under which it was given.

The counsel of the plaintiffs suggest in the complaint, as a defect in the bond, that part which apportions the obligation of payment among the obligors. This suggestion is made under the eleventh section of the Act Concerning Official Bonds, which reads as follows:

"Whenever any such official bond shall not contain the substantial matter, or condition or conditions required by law, or there shall be any defects in the approval or filing thereof, such bond shall not be void, so as to discharge such officer and his sureties, but they shall be equitably bound to the State or party interested, and the State or such party may, by action instituted as other suits on official bonds, in any Court of competent jurisdiction, suggest the defect of such bond, or such approval or filing, and recover his proper and equitable demand or damages from such officer, and the person or persons who intended to become and were included as sureties in such bond."

It is evident from the language of this section, that the defects which are cured upon their suggestion in the complaint, are omissions which, but for the statute, would operate to discharge the obligors. When the bond "shall *not* contain the substantial matter, etc., the bond shall not be *void so as to discharge* such officer and his sureties." The clause which is suggested as a defect, is not such, but a limitation upon the individual liability of each of the sureties. There are in fact several distinct obligations in the same instrument. The principal and each surety obligate themselves, jointly and severally, in the specific sums designated, and although all the parties may be included in the same action, separate judgments are required; none can be entered against the parties for any greater amount than that for the payment of which they have respectively bound themselves. Of the surviving sureties, four are bound in the sum of four thousand dollars, and one in the sum of five thousand dollars, and separate judgments against them should have been entered for these respective amounts. Of course the several judgments would be all satisfied upon the payment of the amount found due from the late sheriff. The form of the judgment entered in the Court below, might be corrected without vacating the report of the referee, and such would be the direction of this Court, but for a discrepancy apparent upon the report between the amount to be credited by the stipulation, and that allowed. As the evi-

dence is not before us, this discrepancy is unexplained, and of itself entitles the defendant to a new trial.

Judgment reversed, and cause remanded.