## CHARLESTON.

STATE, TO USE OF TREASURE STOVE WORKS *v.* PROUD-FOOT, *et al.*

Submitted January 13, 1894.—Decided January 20, 1894.

1. OFFICER—BOND—SURETIES.

P. was duly appointed a constable of Jackson county, and, in pursuance of an order of the County Court of said county, directing that he should not transact any business as such constable until he should file his bond as such constable in the penalty of five thousand dollars, conditioned according to law, to be approv-

ed by the clerk of said court, he executed a bond conditioned according to law in the penalty aforesaid, with two sureties, who with him, acknowledged said bond before said clerk, and left it for record, and he thereupon took the oath of office, and entered upon his duties as constable. In a suit upon such bond against P. and his sureties for failure to pay over money collected by him as such constable said sureties are not relieved from liability for the default of their principal by reason of the fact that said bond was not approved by the County Court.

2. OFFICER—BOND—SURETIES.

The failure of an officer to obtain an approval of his official bond as required by statute does not affect his liability or that of his sureties, if it was otherwise legally executed and delivered.

3. OFFICER BOND—SURETIES.

The approval of an official bond by the court is not intended to increase or decrease the liability of the officer and his sureties, but is intended for the protection and indemnity of the public against any default which may occur in his official acts.

W. MILLER, for plaintiff in error cited Code, c. 13, s. 17, sub. sec. 5 ; Const. Art. IV Sec. 4; Code, c. 10, s. 1 ; 21 W. Va. 202, 203.

J. H. RILEY, N. C. PRICKETT AND OKEY JOHNSON for defendant in error cited 79 Cal. 85 ; Brant Suretyship § 93, 161; Code, c. 10, s. 14 ; 17 W. Va. 452 ; 4 H. & M. 208 ; 2 M. & Sel. 363 ; 2 Blackf. 1 ; 68 Md. 449 ; 10 Am. St. Rep. 843 ; 16 Fla. 204; 7 Gray 1 ; 40 N. J. L. 207 ; 42 N. H. 59 ; 9 Ia. 39 ; 28 Conn. 387 ; 4 H. & M. 208 ; 33 Barb. 196 ; 2 Blackf. 2 ; 15 Ks. 168 ; 67 Cal. 505 ; 2 Harr. 190.

ENGLISH, JUDGE;

On the 27th day of May,1889, J. H. Proudfoot was appointed a constable for the county of Jackson to succeed one B. F. West, who had on that day resigned. On the 7th day of June, 1889, said Proudfoot, with I. M. Adams, W. Lytle, and W. Lytle, Jr., as his sureties, executed a bond conditioned for the faithful performance on the part of said Proudfoot of all of his duties as such constable according to law, and that he should account for and pay over all money that might come into his hands by virtue of said office to the party or parties entitled to receive the same, which bond was acknowledged before and approved by T. H. B. Lemley, then clerk of the county court of said

county, in the vacation of said court, on the 7th day of June, 1889 ; said County Court having on the 27th day of May, 1889, by an order entered of record, provided that said Proudfoot should not transact any business as such constable until he should file his bond as such constable in the penalty of five thousand dollars, conditioned according to law, and said bond should be approved by the clerk of the said court. At the date of said bond the said J. H. Proudfoot took the oath of office prescribed for a constable, and entered upon the discharge of the duties of said office, and continued to act in that capacity until the 13th day of July, 1892, when he tendered his resignation as such constable to the said County Court, which resignation was by said court accepted, and said office was declared vacant.

At an election held on the 4th day of November, 1890, the said J. H. Proudfoot was elected constable of said county, and was so declared by the County Court on the 10th day of November, 1890. He, however, did not execute bond as such constable after he was so declared elected, nor take the oath of office required, but continued to act as constable until the 11th day of July, 1892, when, on motion of the prosecuting attorney of said county, a rule was awarded against him to show cause why he should not give bond, and why said office of constable should not be declared vacant; and on the 13th day of July, 1892, the said Proudfoot resigned said office, as above stated.

On the 13th day of October, 1891, while said Proudfoot was acting as such constable, he received on an execution placed in his hands for collection in favor of Treasure Stove Works against A. W. Kidd & Sons the sum of one hundred and twenty four dollars and thirty three cents with interest thereon from the 22d day of August, 1891, and three dollars and ten cents costs, and no part of said sum has ever been accounted for or paid over by said Proudfoot, or any person for him.

This state of facts existing, an action of debt was brought to the September rules, 1892, in the name of the state of West Virginia, which sued at the relation and costs of R. P. Thompson and W. H. Francis, partners doing business

under the name and style of Treasure Stove Works, against said J. H. Proudfoot, as late constable, and I. M. Adams, W. Lytle, and W. Lytle, Jr., sureties on his official bond. The defendants I. M. Adams and W. Lytle craved oyer of the writing obligatory, demurred to the declaration, in which demurrer the plaintiff's joined, and thereupon they pleaded conditions not broken, and issue was thereon joined, the demurrer was overruled and disallowed and the cause was submitted to the court in lieu of a jury, which resulted in a finding for the defendants I. M. Adams and W. Lytle, to which finding and judgment the plaintiffs excepted and moved the court to set aside said judgment, and grant them a new trial of said action, which motion was overruled, and moved the court also to certify all the evidence given or heard upon the trial, and presented their bill of exceptions, which was signed and sealed and saved to the plaintiff, and made a part of the record.

Did the Circuit Court err in finding for defendants I. M. Adams and W. Lytle, and dismissing the action as to them? It is a conceded fact that said J. H. Proudfoot, together with I. M. Adams, W. Lytle, and W. Lytle, Jr., entered into and executed the bond declared on by the plaintiffs. It was also ordered by the said County Court that said Proudfoot should not transact any business as such constable until he should file his bond as such constable in the penalty of five thousand dollars, conditioned according to law, and directed that said bond should be approved by the clerk of said court; but said court did not at any time take the acknowledgement of or approve said bond, while our statute (Code, p. 111, c. 16, s. 14) provides that every constabie shall give bond with good security, to be approved by the County Court.

Now, it must be conceded that the County Court had no power to delegate its right and duty to approve such bond to the clerk of said court when the statute expressly provides that the bond shall be approved by the County Court, but the question for our consideration is: Did the failure on the part of the County Court to perform its duty by approving said bond relieve the sureties in said said bond in voluntary executing the same, acknowledging it before the

clerk, and delivering it for record? Can said sureties complain that the bond was not approved? The manifest object of the law requiring its approval is not that the sureties may in any manner be benefitted thereby, but that the public—the people who may intrust their claims to the constable for collection—may be protected.

The court in this case, with a view of affording such protection, entered in its order directing that said Proudfoot should not transact any business as such constable until he should file his bond as such constable in the penalty of five thousand dollars, conditioned according to law, which bond should be approved by the clerk of said court; and at the date of said bond the said Proudfoot took the proper oath of office, and entered upon the discharge of his duties of said office. The said bond was acknowledged before said clerk and approved by said clerk, it is presumed, by satisfying himself as to the sufficiency of said sureties; and while it can not be said that this action on the part of the clerk in vacation was an approval of said bond by the County Court, yet it was acknowledged before him, and delivered to him for record, and the action of said sureties in thus executing and delivering said bond enabled said constable to qualify and assume the duties of the office.

Murfree, in his valuable work on Official Bonds, under the head of "Approval of Bonds," (section 175) says: "Attempts are frequently made by officers and their sureties to evade the responsibility of their official bonds on the ground that the bond was not approved by the proper officer or in the appropriate manner or not approved at all. They have usually failed for the obvious reason that, if the officer had been inducted into office, and thus enjoyed the advantage afforded by the execution of the bond, it does not lie with him or his friends to controvert the validity of their obligation because of the omission of a ceremonial which is not intended for their protection, but the precise reverse—to protect the public against them. The courts in such cases very readily accept slight proof of approval of bonds under which the obligors have gone into office. Hence, in Missouri, a bond was held to be approved because it was handed to the clerk of the County Court in vacation,

who marked it 'Filed,' and put it away in a proper place in his office. Indeed, the court went so far as to say that the failure of the County Court to either approve or reject at all in no degree invalidated the bond."

The case referred to by the author is found in 7 Mo. 46, styled *Jones* v. *State,* The second point of syllabus reads as follows: "The failure of the County Court to approve or reject a constable's bond taken by the clerk in vacation will not invalidate the bond. The duty enjoined upon the County Court in this respect was intended for the security of the public, and their omission to perform such duty can not injure the constable and his securities."

The Missouri statute under which this decision was rendered provides that the bond shall be approved by the court or clerk in vacation, and, if taken by the clerk in vacation, shall be approved or rejected by the court at the next term. So, also, in the case of *Moore* v. *State,* 9 Mo. 198, it was held that "a bond given by a collector is valid against him and his securities, though not approved by the County Court." Upon this point see, also, *State* v. *Fredericks,* 8 Ia. 553.

In the case of *Lyttle* v. *Cozad,* 21 W. Va. 199, which was a contest in reference to the validity of a commissioner's bond executed by a commissioner under the statute before proceeding to make sale of land, one of the securities claiming and showing that he had signed the bond and delivered it to said commissioner with the agreement and understanding that others were to sign it as securities before it was delivered, GREEN, J., in delivering the opinion of the court, says: "When one of two innocent persons must suffer by the act of a third, he who has enabled such person to occasion the loss must sustain it."

The question as to the effect of a failure to properly approve an official bond was before the supreme court of Arkansas in the case of *Auditor* v. *Woodruff,* 2 Ark. 73, and it was there held that, although the statute requires the official bond of the state treasurer to be approved by the governor, and that approval to be indorsed thereon, before the commission issues or the person qualifies or proceeds to discharge the duties of his office, yet the failure of the governor to indorse such approval or to approve the bond

neither creates nor destroys, increases nor diminishes, the obligation of the contract, which, if in every other respect legally executed, is perfect. The statute, by implication, imposes on the person whose bond is required to be thus approved the duty of submitting it to the executive for his approval. The design of the legislature in requiring the bond to be approved by the governor was to provide for the public as well at the individuals an undoubted assurance that the security is perfect, and amply sufficient to indemnify them for any loss or injury which they may sustain by failure of the officer to perform his official duties. But the failure of the governor to approve the bond neither discharges the officer nor his securities. The approval is not a condition precedent, until the happening of which the obligation of the contract remains, as it were, suspended, so that it does not attach upon the obligors. The bond became perfect by execution and delivery as at common law. And in the case of *Taylor* v. *Auditor*, reported in 2 Ark. 174, it was held that the failure of an officer to obtain an approval of his official bond as required by the statute does not affect his liability, or that of his sureties, if it was otherwise legally executed and delivered. These cases, we think, state the law correctly.

Counsel for the defendants in error, in their brief, rely upon the case of *People* v. *Van Ness*, 79 Cal. 85 (21 Pac. 554) where it is held that "an official bond, like every other deed, is not operative until a delivery, nor are the sureties liable thereon for any breach until after delivery. There can be no delivery of an official bond until its approval by the proper authority." This is quoted from the syllabus of the case, and, turning to the opinion of the court, we find Thornton, J., delivering the opinion of the court, says: "There was no delivery of the second official bond executed by Van Ness and sureties until the day on which it was approved by the governor. We can not see how there could have been any delivery until that date. The bond was not in a condition to be delivered until that date. Prior to that time it was inchoate, and imperfect as a bond. Like every other deed, that bond was not operative until delivery. It follows that the parties to the second bond were

not liable for any breach until after its delivery," *etc.*, citing *Sacramento* v. *Bird*, 31 Cal. 74. But when we turn to that case we find that it simply lays down the proposition that "when an official bond, proper in form and substance, is signed and sealed by the obligors, and approved by the proper officer, and filed in the office appointed by law, it it is both executed and delivered to the people of the state of California"—a proposition which must be readily conceded; but the question is whether other acts on the part of the obligor and his sureties may not constitute a delivery, although in some respects they may fall short of this standard. By a decision of the Supreme Court of the same state, reported in 29 Cal. 429, in the case of *People* v. *Evans*, it was held that "the sureties on an official bond are liable under the statute, notwithstanding it was approved by the wrong officer or board;" and in the case of *People* v. *Edwards*, 9 Cal. 286, it was held that "the defect in the approval of a sheriff's bond can not be set up as a defence in an action on said bond against the sureties.

The object of the law in requiring the approval is to insure greater security to the public, and it does not lie in the obligors to object that their bond was accepted without proper examination into its sufficiency by the officers of the law." The opinion in this last case was delivered by FIELD, J., who for many years has been one of the justices of the United States Supreme Court. On this point we quote the American & English Encyclopedia of Law, under the head of "Bonds," (page 466) where it is said : In some states an official approval is required as a condition precedent to its validity, and of the title of the principal to his office. Such an approval is a condition required for the protection of the public, and its omission can in no instance inure to the benefit of the obligors. Attempts to invalidate bonds for such reasons have usually failed."

So in the case of *McCracken* v. *Todd*, 1 Kan. 149, it was held that "the sureties on a sheriff's bond can not take advantage of an omission to have the bond approved, and its amount prescribed by the probate court, where the amount is within the statutory limit. The deposit of such bond for record held to be a delivery."

In the case under consideration the constable's bond was executed by the principal and his sureties, and in pursuance of an order of the County Court, which fixed the penalty of the bond at five thousand dollars, was acknowledged before the clerk of said County Court in vacation, and approved by him in pursuance of the direction of said Court, and was admitted to record in said office. By depositing the bond in said clerk's office executed in the penalty prescribed by said court, said constable and his sureties gave said court the option of accepting or rejecting the same at the next term thereof; and, besides, if the court was not satisfied with the security in said bond, under section 20 of chapter 10 of the Code the court might at any time require from said constable a new bond, or an additional bond to that already given, to be approved by such court; but it does not appear that said court at any time required a new or additional bond, although it was recorded in the clerk's office of said court, and the court must have had notice of its character. The weight of authority, however, as we have seen by the cases above cited, leads to the conclusion that sureties on a bond of this character can not take advantage of the fact that the bond has not been approved by the proper court or officer to shield themselves from liability occasioned by the default of their principal, as the approval of the bond neither adds to nor detracts from the obligation of parties signing such bond; and, if the bond in controversy could not be considered good as a statutory bond, there is nothing to prevent its being held good as a common-law bond. Murfree on official Bonds says (section 64:)

"It very often happens that a bond executed in consequence of a statute, and with the design, by conformity to its terms, of being a valid statutory or official bond, falls short of the statutory requirements, and fails to become a bond of that peculiar character. In such cases the question arises whether the bond so imperfect or defective is absolutely void or valid as a common-law bond, irrespective of the design to impart to it a statutory and official character. The rule upon this subject is well stated in a recent case in Illinois. The court says: 'We have several

times held that an obligation entered into voluntarily, and for a sufficient consideration, unless it contravenes the policy of the law, or is repugnant to some provision of the statute, is valid at common law, notwithstanding the attempt may have been made to execute it pursuant to a statute with the terms of which it does not strictly comply. * * * And if an officer and his sureties of their own accord fix upon the amount of the penalty (within the prescribed limits) execute the bond, and deposit it with the proper custodian, it is not only good as a common-law bond, but, in Kansas, valid as a statutory bond as well, although the proper court neither fixed the amount of the penalty nor approved the security," citing *McCracken* v. *Todd,* 1 Kan. 148, above quoted.

In the case of *Supervisors* v. *Dunn,* 27 Gratt. 615, Staples, J., delivering the opinion of the court says: "A person who signs, seals, and delivers an instrument as his deed will never be heard to question its validity upon the ground that it was not acknowledged by him, nor proved at the time of the delivery. It is the sealing and delivery that gives efficacy to the deed, and not proof of execution." And this, we think, propounds the law correctly upon this point.

In the case under consideration, however, the County Court fixed the amount of the bond, and directed that it should be deposited with its clerk. It is, however, insisted by counsel for the defendants in error that the successor to the constable did not qualify in a reasonable time after the expiration of his official term, and that the sureties should be exonerated. In this case said Proudfoot was elected his own successor, and was so declared on the 10th day of November, 1890. He failed to qualify or give bond, but continued to perform the duties of his office, and while acting as such constable, on the 13th day of November, 1891, received the execution mentioned in the plaintiff's declaration, less than a year after his election.

The case of *Com.* v. *Fairfax.* 4 Hen. & M. 208, is cited and relied on to show that the sureties in this bond were released, but that decision was under a Virginia statute which required that the sheriffs should be nominated and

commissioned annually (see section 1, c. 80, of the Revised Code) the sixth section of which provides that every person commissioned and qualified as aforesaid should be continued in office for one year after his qualification, and might, with his own consent, and the approbation of the executive, be continued for two years, and no longer, *etc.;* very different from the provision in our constitution (article IV, § 6) which provides that such officers shall continue to discharge the duties of their respective offices until their successors are elected or appointed and qualified.

In the case of *Monteith* v. *Com.*, 15 Gratt, 172, the sheriff was re-elected, and gave bond and qualified, and it was held in that case that it could not be held that he continued to hold over under his first election on the ground that his successor had not qualified so as to subject his sureties in his previous bond. Article VI, § 23, of the Virginia constitution then provided that such officer should continue to discharge the duties of their respective offices until their successors were qualified, and ALLEN, J., in delivering the opinion of the court, among other things, said: "In the case under consideration the sureties are liable for the discharge of the duties of the office for the term for which the bond recites he was elected, and thereafter until a successor qualifies." Upon this question, see, also, *Ex parte Lawhorne*, 18 Gratt. 85; also *Com.* v. *Drewry*, 15 Gratt. 1, which last-named case is very similar in its facts—the sheriff held over, and it was held that his sureties were liable for acts performed after his term expired.

Again, section 21 of chapter 10 of our Code provides for the relief of sureties on such bonds on petition when they apprehend pecuniary loss, but these sureties, with full notice of the law, allowed their principal to go on and perform the duties of the office, and thus put it in his power to receive claims from the public, and, when a default occurred, they claim to be released, because he has held over an unreasonable time, which they had it in their power to prevent. Numerous authorities have been cited to show that sureties are liable only for the term for which the officer was elected or appointed, but most of them refer to officers of corporations who are required to be elected

annually, and under provisions of statutes and by-laws so different from our constitution and statutes that we think they should have little controlling influence in this case.

My conclusion, therefore, is that the Circuit Court erred in finding for the defendants I. M. Adams and W. Lytle, the sureties in said bond, and giving judgment for them. The judgment complained of is reversed, and the cause remanded to the Circuit Court of Jackson county, in order that a proper judgment may be rendered therein, there being no evidence that J. H. Proudfoot and W. Lytle, Jr., were before the court; and the defendants in error must pay the costs of this writ.