THE STATE OF IOWA, for the use, &c., *v.* FREDERICKS *et al.*

Section 330 of the Code, does not include the bond of the school fund commissioner, required by section 1090 of the Code; and it is not necessary that the bond of that officer should be approved by the county judge.

Chapter 68 of the Code was intended to furnish all the rules upon the subject of "qualification for office" by the fund commissioner.

In an action on a school fund commissioner's bond, it is not necessary, in order to make it a valid statutory bond, to aver and prove in the first instance, that the sureties were approved by the clerk and sheriff of the county.

Where the signatures to a school fund commissioner's bond, are undenied, or if denied under oath, are proved, and it is shown to have been made and signed by the officer and his sureties, as a part of his qualification for office; that the officer took the necessary oath, had the same indorsed on the bond, and both filed in the office of the proper clerk; that thereupon he entered upon the duties of the office; and when the bond is found in the possession of the state, and put in suit by her, these things are *prima ·facie* evidence that the bond was fully executed and accepted, and until satisfactorily rebutted, entirely sufficient.

*Appeal from the Tama District Court.*

MONDAY, JUNE 13.

THE petition in this case alleges, that on the 7th day of April, 1856, the defendant, Fredericks, was duly elected school fund commissioner, for the county of Tama, for the term of two years; and that on the 21st of said April, he, with the other defendants, his sureties, made their writing obligatory, conditioned for the faithful discharge of the duties devolving upon said Fredericks as said fund commissioner. The condition of the bond is specifically set out. It is there stated that this bond was presented to the clerk of the district court of said county to be filed, and was by him filed in his office; that thereupon, said Fredericks entered upon the dischargeof the duties of said office, "and from that time acted as, and in fact was, the school fund commissioner of said

county ;" that he was duly qualified and sworn ; and that during the time he was thus acting, he had received large sums of money, by virtue of his office, which he had failed and refused to pay over, &c. A copy of said writing obligatory is attached to the petition, in the form, and containing the conditions required by law—has the oath of office of said Fredericks indorsed on the same—is marked, " filed in my office, April 21st, 1856, David Applegate, clerk D. C.," but contains no indorsement of approval.

To this petition there was a demurrer, for the reason that it does not show that the bond was ever accepted or approved by the proper authorities, as required by law. This demurrer was sustained, and the plaintiff refusing to plead over, the defendants recovered their costs. Plaintiff appeals.

*I. M. Preston,* for the appellant.

*Smyth, Young & Smyth,* for the appellees.

WRIGHT, C. J.—The official bond of the school fund commissioner, is required to be deposited with the clerk of the district court, and the sureties are to be approved by such clerk, and the sheriff of the county. Code, section 1090. Section 330 provides, that the bonds of county officers shall be approved by the county judge, which approval shall be indorsed upon the bond, and signed by the approving officer. Section 337 recites, " that no official bond shall be void, for want of compliance with the statute, but it shall be valid in law for the matter therein contained.".

The rule is believed to be uniform, that the bond of a public officer, and his sureties, though not good as a statutory undertaking, may be good as a voluntary obligation, and that an action at common law may be maintained thereon. To this effect are the following, among other authorities: *Goodman* v. *Carroll,* 2 Humph., 499 ; *Gathwright* v. *Callaway Co.,* 10 Missouri, 663 ; *Stephens* v. *Crawford,* 3 Kel-

ley, 499; *The State* v. *McAlpine*, 4 Iredell, 140; *The State* v. *Perkins*, 10 Iredell, 333; *Moore* v. *The State*, 9 Missouri, 334; *Marshall* v. *The State*, 8 Blackf., 162.

It is true, that in suing upon such a bond, the state or county might be confined to the remedy given at common law, and could not claim any benefit given by the statute, in case of a breach of a statutory bond; but it would nevertheless be valid as a common law deed, or undertaking. The tendency of the legislation and the decisions of the courts of the different states, is to hold the obligors upon official bonds, liable as upon statutory undertakings, and to disregard objections purely technical in their character. These bonds are given for the security of the public, against the frauds and peculations of persons in official positions—the statutes requiring them, frequently give a summary process for their enforcement, and heavy damages in the way of interest on any money improperly withheld—and only upon the most cogent and satisfactory grounds, should they be held invalid. In consonance with this thought, are the cases above cited, as well as others. Thus, in 9 B. Monr., 128, it is held, that while in declaring on an official bond, it should appear that it was taken by the proper authority, yet this will be presumed, unless the opposite be alleged by plea. And in 9 Mis., 334, that the official bond of a collector, is valid against him and his sureties, though not approved by the court, as required by law. And still again, in 10 Iredell, 333, where the chairman of the the board of common schools, was not appointed on the proper day, and the county court did not require from him an official bond, but a bond was nevertheless given, with sureties for the discharge of his duties, it was held, that he and his sureties were liable on the bond, for a breach of his official duties. The section of the Code, (337), "that no official bond shall be void, for want of compliance with the statute," also indicates quite conclusively the tendency of the legislative mind, upon this subject in in this state. And in the same direction, is section 2506,

which gives a general rule on the subject of security, where no particular mode is prescribed, and directs to whom such security shall be given, or such bonds be made, and then provides "that mere mistake in any of these respects, will not vitiate the security."

In view of these cases, and this legislation, let us look at the case before us. The petition shows that Fredericks was duly elected school fund commissioner of Tama county; that after this election, he made his official bond, signed by himself and the other defendants; that this was conditioned in all respects as required by law; that it was presented to the clerk of the district court, to be filed, and was filed by him in his office; that said Fredericks took the oath of office required by law, which was duly indorsed upon this bond; that thereupon he entered upon the discharge of the duties of said office, "and from that time acted, and in fact was, the school fund commissioner of said county;" and that he, as such, received large sums of money which he had failed and refused to pay over to his successor. It is not averred, however, that the sureties were approved by the clerk and sheriff, nor that the bond was approved by the county judge.

Now, in the first place, is it necessary that the county judge should have approved the bond. Our opinion is, that section 330, does not include the bond of the fund commissioner, required by section 1090.

*First.* The bonds of all county officers, except those of the clerk of the district court and the county judge, are, by the general law, to be filed and kept in the county judge's office, (section 333). By section 1090, however, the bond of this officer is to be deposited with the clerk.

In the second place, chapters 65 to 72, inclusive, of the Code, relating to the subject of education, are but a compilation of the laws upon that subject, passed prior to that time, and published with the Code, by virtue of a joint resolution of the general assembly, approved February 5,

1851. These chapters formed no part of the general system of laws as reported by the commissioners appointed to prepare the Code. The entire law upon the subject of education—schools, school lands, and funds—remained unchanged. And while chapter 29 particularly points out the manner of giving bonds by all other officers, both state and county—directs their respective penalties—the number of sureties necessary—and the form of the oath—the office of fund commissioner is nowhere mentioned. And so it is in chapter 24, which provides for "elections, officers and their terms." Chapter 68, (sections 1089 to 1107, inclusive), provides for the election of this officer—for his giving bond—its approval—his oath of office—and his general duties. This chapter is a part of the school law, and was intended to furnish all the rules upon the subject of qualification for office by the school fund commissioner.

Finally, no necessity is perceived in requiring that the county judge should approve the bond, and that the clerk and sheriff should approve the sureties. The condition of the bond is clearly pointed out by law. The county judge, therefore, has nothing to do in fixing its terms. And the same is true as to the penalty. When the sureties are approved, what then remains to be done by the county judge? We can conceive of nothing.

The sureties, then, are to be approved by the clerk and sheriff, and this is all that is required. To make it a valid statutory bond, is it necessary to aver and prove, in the first instance, that they were thus approved. We think not. Where the signatures to the bond are undenied, or if denied under oath, are proved, and where it is shown to have been made and signed by the officer and his sureties, as a part of the "qualification for office," as it is styled in the Code—where the officer took the necessary oath, had the same indorsed on the bond, and both filed in the office of the proper clerk—where it is shown that thereupon he entered upon the duties of said office, and continued to fill the same—and when the bond is found in the possession of the state, and

put in suit by her, we think these things are, at least, *prima facie* evidence that it was fully executed and accepted, and until satisfactorily rebutted, entirely sufficient. If the bond never was, in fact, received or accepted, then, of course, the question would be very different. The presumption is, however, where it is produced from the proper depository, that it was properly approved and accepted. We are, at least, not inclined, except in a case clearly requiring it, to hold that such an objection can be made by the obligors on the bond. Relying upon the sufficiency and validity of the bond, the officer has been permitted to take upon himself the duties of the office, and enjoy its emoluments. *Prima facie*, at least, this undertaking was delivered by all the obligors, and received by the officers acting for the state and the school fund, as the proper official bond of the commissioner; and it does not lie in the mouth of those executing it, to say, that unless it was formally accepted and approved, it is invalid. If the officer has, as charged, received a portion of the school money, which he refuses and neglects, contrary to his undertaking and solemn oath, to pay over, the spirit, as well as the letter and policy of the law, dictates that he and his sureties shall be liable for it, upon a bond given even under the circumstances here disclosed, rather than that he and they shall avoid liability, by interposing a defence that has neither good law or morality to sustain it.

We are referred by counsel for appellees, to the case of *The U. S. Bank* v. *Dardridge* 6 Pet., 440. An examination of the case, satisfies us that it sustains the positions taken above. The case of *Carr* v. *State*, 4 Iowa, 289, is so entirely unlike this, in all its material facts, that we need not comment upon it.

Judgment reversed.