HOLT COUNTY V. BARRETT SCOTT ET AL.

FILED DECEMBER 22, 1897. No. 7483.

1. County Treasurer: ADDITIONAL BOND: COUNTY BOARD. By Compiled Statutes, chapter 10, section 21, a county board is empowered, according to circumstances, to require the treasurer either to give an additional bond, or to give additional sureties on the subsisting bond.

2. ———: ———: SURETIES. Sureties executed a county treasurer's bond with the above provision in contemplation and forming a part of their contract, and they are not released from liability on the bond by the board's requiring additional sureties.

3. Evidence of Admitted Facts: REVIEW. It is not error to exclude from evidence a written instrument, the making and contents whereof are admitted by the pleadings.

4. **Qualification of Officer:** OFFICIAL BOND: APPROVAL.  To entitle one elected to an office requiring an official bond to be inducted into office, his bond must be approved and filed for record before his induction, and within the time fixed by statute.

5. ———: ———: ———.  While the rule last stated prevails in actions in which it becomes necessary for the claimant of the office to prove his strict legal title to the office to show that he is the officer *de jure*, such as actions of quo warranto, or to recover the fees from a party who, during the term ·for which the officer was elected, held the office as a *de facto* officer, and received such fees, in actions on official bonds for alleged breaches of the conditions thereof, a very different doctrine prevails and is applicable.

6. **Official Bonds:** APPROVAL: LIABILITY OF SURETIES.  The requirements of the statutes in regard to approval of official bonds is for the benefit and convenience of the public, and not directly for the treasurer or his sureties; and, where the bond has been executed and delivered within the time prescribed by the law, though not approved, or not until a date after the time prescribed, and by virtue of the bond and its delivery the treasurer has obtained possession of the office, and received the fees and emoluments thereof, the sureties cannot escape liability for any breaches of the conditions of the bond by their principal, because the bond was not approved or not so until a date without the time prescribed by law.

7. ———: ———: ———.  The official bond of a county treasurer with the oath indorsed thereon was filed within the statutory limit for such act. · It had not then been approved, and was not approved until a date beyond the limit prescribed. He entered upon the duties of the office and during the time he continued therein, received the fees and emoluments appertaining thereto.  In ·an action on the bond for an alleged breach of its conditions, *held*, that the fact of the lack of approval at the time prescribed by law was not matter of forceful defense for the sureties on the bond.

8. **Officers:** QUALIFICATION.  One who holds and performs the duties of an office and receives the fees and emoluments thereof by virtue of an election or appointment thereto or under color of right, is a *de facto* officer and not a mere intruder.

9. **County Treasurer:** APPROVAL OF BOND: SURETIES.  A person who was holding the office of county treasurer, and was re-elected, or elected for a second and.the succeeding term, filed a bond with the oath of office indorsed thereon within the time fixed by law.  The bond then, however, lacked approval, and was not approved until a date without the·time fixed by law for such action.  The treasurer continued in the office. *Held*, That he was in the office as of the new term under color of right, and was an officer *de facto*, and the sureties on the bond were precluded or estopped from denying that he was in possession of the office of the second term and *de jure*.

16

10. ———: ———. The fact that an official bond has been approved does not of itself constitute or evidence the delivery and acceptance of the bond.

11. ———: ———: Relation. *Quære:* Are approval, taking and subscribing the oath of office indorsed on the bond, and its filing for record constituent elements of its delivery, the filing being the dominant one; and if it is within the limit of time prescribed by statute, and the approval of a later date, and beyond that of the limit, does the approval relate back to the filing?

12. Principal and Surety: Bonds. The decision in the case of *Cutler v. Roberts*, 7 Neb. 4, examined and distinguished.

Error from the district court of Holt county. Tried below before Chapman, J. *Reversed.*

The facts are stated in the opinion.

*H. E. Murphy* and *M. F. Harrington,* for plaintiff in error.

References: *Manley v. City of Atchison,* 9 Kan. 364; *Supervisors of Richmond County v. Wandel,* 6 Lans. [N. Y.] 33; *Sullivan v. State,* 23 N. E. Rep. [Ind.] 150; *State v. Lincoln County,* 18 Neb. 283.

*John H. Ames, E. F. Pettis, E. M. Bartlett, John C. Watson, H. M. Uttley,* and *R. R. Dickson, contra.*

In support of arguments in favor of the contentions that the bond was properly excluded as evidence against the sureties, and that the court properly directed a verdict for defendants, reference was made to the following cases: *State v. Lansing,* 46 Neb. 514; *United States v. Le Baron,* 19 How. [U. S.] 73; *Broome v. United States,* 15 How. [U. S.] 143; *Bruce v. State,* 11 Gill & Johns. [Md.] 382; *Winneshiek County v. Maynard,* 44 Ia. 15; *Young v. State,* 7 Gill & Johns. [Md.] 253; *State v. Jarrett,* 17 Md. 310; *Davis v. Haydon,* 3 Scam. [Ill.] 35; *State v. Cosgrove,* 34 Neb. 386; *State v. Lynn,* 31 Neb. 770; *McMillin v. Richards,* 45 Neb. 786; *Commonwealth v. Yarbrough,* 2 S. W. Rep. [Ky.] 68; *Commonwealth v. Magoffin,* 25 S.

W. Rep. [Ky.] 599; *Mayo v. Renfroe*, 66 Ga. 408; *City of Chicago v. Gage*, 95 Ill. 593; *Archer v. State*, 74 Md. 443; *Harwood v. Marshall*, 9 Md. 103; *County Commissioners of Dorchester County v. Meekins*, 50 Md. 45; *McPherson v. Leonard*, 29 Md. 377; *Thomas v. Owens*, 4 Md. 220; *United States v. Boyd*, 15 Pet. [U. S.] 187; *Gunther v. State*, 31 Md. 29; *Union Bank of Maryland v. Ridgely*, 1 Harr. & G. [Md.] 231; *State v. Wayman*, 2 Gill & Johns. [Md.] 279; *Falconer v. Shores*, 37 Ark. 386; *State v. Carneall*, 10 Ark. 156; *Basham v. Commonwealth*, 13 Bush [Ky.] 36; *Rounds v. City of Bangor*, 46 Me. 541; *Blake v. Sturtevant*, 12 N. H. 569; *Rounds v. Mansfield*, 38 Me. 586; *Wood v. State*, 40 S. W. Rep. [Ark.] 87.

HARRISON, J.

This action was instituted for the county of Holt on what was claimed to be the bond of Barrett Scott, as treasurer of said county. It was alleged in the petition that at a general election held on a stated day of November, 1891, Barrett Scott was duly elected county treasurer of Holt county for the term of two years, the term having its inception on the first Thursday after the first Tuesday of the month of January, 1892; that on December 29, 1891, Barrett Scott, as principal, and his co-defendants, as sureties, executed and delivered the bond in suit, and that the principal on the same day was duly qualified or took the oath of office. It was further averred that the bond was approved March 1, 1892; that Scott, on the day designated by law for the commencement of the term of office of county treasurer, assumed such office, and entered upon the discharge of the duties thereof, in which he continued until August 18, 1893, on which date the office was assumed by one R. J. Hayes, who had been duly appointed Scott's successor. The default alleged, or breach of the conditions of the bond, was that the principal therein had failed to account for and pay over and had converted funds of the county which he had received as its treasurer in the sum of

$90,000. There was an answer filed for the principal in the bond, but against him the county recovered a judgment of which there is no complaint here, and his plea may be passed without further notice. The co-defendants, the sureties, all joined in a plea of their defenses, except Joseph S. Bartley, for whom there was filed a separate answer. The answer of all the sureties except Bartley admitted the allegation of the petition relative to the election of Barrett Scott to the office of county treasurer of Holt county, and it was alleged for each of these answering defendants that Barrett Scott, soon after his election, prepared and presented to them, respectively, a bond similar to the one declared upon in the petition in the action, and requested them to sign the same as his sureties, with which request they complied of date December 17, 1891, and then delivered the instrument to the principal therein; that Barrett Scott had been and was, during the term terminating in January, 1892, the county treasurer of Holt county, and his selection for the office at the election in November, 1891, entitled him to become his own successor, and it was of the duties of the county board to approve any bond he might present prior to the inception of the term of office, if approved at all, and before approval to require and compel an accounting for and production of all funds in his hands as treasurer or with which he was then chargeable; that the board wholly failed to perform its duty in either particular, which operated to discharge the answering defendants, since they had executed the bond with a full reliance on the strict performance by the board of such duties; and, further, that the failure to approve the bond before the time by law fixed for the commencement of the term of office operated a vacancy of the office; also, if said bond ever became of effect, Barrett Scott was ordered, on March 1, 1892, removed from the said office, and a vacancy in said office declared to exist, and, if any responsibility had attached to defendants by reason of

their executing the bond, it then wholly ceased.   It was further averred that the board, with full knowledge that Barrett Scott had failed to account for the funds received during his first term as county treasurer, had not compelled an accounting, but had wholly failed so to do, allowed him to retain the office, perform its duties, and collect moneys, and on March 1, 1892,—long after the proper time for such action,—fraudulently approved the bond, with the intention then entertained of thereby rendering the defendants responsible for the past acts of the principal in the bond.   The answer of Bartley, in addition to pleas similar to those contained in the pleading of his co-defendants, alleged that at some date in the month of February, 1892, the county board had a pretended accounting with Barrett Scott, at which certain moneys and property were produced and represented as belonging to Holt county, which in truth and in fact were not the moneys and property of said county,—all of which facts were then known by the board; and that, regardless of such facts and its knowledge thereof, the board, on March 1, 1892, approved the bond; that the defendant signed the bond in good faith and in ignorance of the facts set forth in this portion of his plea, and also of the further fact that Barrett Scott had not fully adjusted the accounts and charges of his first term; that in so signing the bond the defendant relied on the county board to compel the proper adjustment of the accounts and charges of the prior term of office of the treasurer, which duty was wholly neglected and purposely disregarded by the board.   It was also of Bartley's answer that during the month of July, 1892, the board, without the knowledge or consent of the answering defendant or his co-defendant sureties, procured two persons to then sign said bond as additional sureties (the persons so signing are not parties to this suit); that such signing constituted a material alteration of the bond, and operated a release of defendants from liability on the bond.   There were in the answers for all

defendants general and special denials of the execution
of the bond, of the principal therein having ever taken
the office for the second term; also, of any failure on
his part to fully perform any and all duties of the office.
Just how much force and significance, in view of some
express or implied admissions of the answers, such de-
nials possessed, we need not now notice or discuss.   The
replies were general denials.

The trial of the issues was before a jury.   The signa-
ture of the principal on the bond was identified and the
instrument offered in evidence.   An objection was made,
but the bond was received as against the principal and
ruling was withheld as to the other defendants.   Dur-
ing the further course of the trial all further objections
to the admission of the bond on the ground of lack of
proof of the signatures of the sureties was cured by an
admission as to each and all of them, but the bond was
not then admitted as against the sureties.   What was
the final action in this regard we will relate in what we
conceive to be its proper connection.   During the fur-
ther progress of the trial there was offered for the county
evidence of the acts of the county board, Barrett Scott,
and some other parties who, in one way or another, be-
came participants in the matter of the office of county
treasurer at that time.   Such evidence tended to show
that the bond in suit had been delivered to the county
clerk and by him filed; that, probably some weeks after
the expiration of Scott's first term as county treasurer,
there was an attempted adjustment of the accounts and
affairs of the office between him and the board, when
(this was during the month of February, 1892) it was
discovered that Scott was chargeable with $70,000.04;
that there was on hand a very small sum in cash or
money, and the balance was claimed by Scott to be on
deposit in certain banks, of which he at the time fur-
nished a list by which was shown the amount asserted
as on deposit in each of the banks named in the list.
This was not satisfactory to the board, and a production

of the funds was insisted upon.  To comply with this demand Scott requested ten days, which was granted by the board, and the treasurer did, at the time designated, have in the vault of the office an amount of money which, combined with a sum represented by a receipt from the state treasurer, made the amount with which he was then chargeable.  Some considerable time afterward the board again demanded that the treasurer produce the money, and allow it to be again counted by the board or its committee appointed for the purpose, but this was met with a refusal or a failure to comply.

On March 1, 1892, the bond in suit was approved, and on the same day Scott was charged in impeachment proceedings before the board, and on the fourth day of the same month was adjudged guilty, and his removal from office decreed or ordered.  This action of the board was reviewed in the district court in error proceedings, and on March 31 was reversed, so far as the record before us discloses.  (And we will say here that in reference to any fact at this time we but state what the record now presented shows.)  Scott continued in the possession and performed the duties of the office.  No further steps were taken until July 14, 1892, at which time, by resolution of the board, the insufficiency of the treasurer's bond was declared, and he was ordered "to give additional freehold sureties for the better protection of the taxpayers."  In an attempted compliance with this order, on or about July 16, Barrett Scott procured William McWhorter and Milo Pickering to sign the bond. After this a committee appointed by the board, presumably after an examination of the bond and an inquiry of the financial responsibility of the proffered additional sureties, reported on August 31 that the bond was still insufficient.  It was then ordered that Scott be required to have his bondsmen certify on his bond to the amount of $200,000.  On September 1 the board, by resolution then carried, declared that after ten days' notice Scott had failed to give sufficient sureties, and

the office of treasurer was vacant.    An appointment
was then made, and, to the extent we are informed by
this record, the appointee gained possession of the office
in August, 1893, by the aid of the courts.    There was
also evidence received which tended to prove the treas-
urer's failure to account for the funds of the county in
a stated sum.    When, at the close of the introduction
of its evidence in chief, the plaintiff rested, the objection
for the defendants, the sureties, to the admission of the
bond was renewed and sustained.    A motion was then
made for the sureties that a verdict in their favor be
directed.    This was done.    Such a verdict was rendered
and judgment entered thereon.

The assignments of error have for their burden the
exclusion of the bond from evidence, and the giving the
peremptory    instruction.    One—probably    the    main—
ground of the objection to the introduction of the bond
in evidence was that there was a variance between the
instrument declared upon and the one the county offered,
and it is apparent, from what occurred and what was
said by the court at the time, that this was the ground
on which the objection was sustained.    The difference
between the bond stated in the petition and the one
offered was that on the latter appeared the two names
written thereon in July, 1892.    It is contended that these
additional sureties were not disapproved or rejected,
were in fact accepted, or became responsible as bonds-
men, which rendered the bond offered essentially dif-
ferent from the one on which the petition was based.
The facts, as they are before us, will not bear out this
contention.    The action of the board on September 1,
1892, after these names had been added to the bond, in
declaring the office vacant was a clear and direct refusal
of the parties as additional sureties.    A rejection or dis-
approval of the sureties rejects the bond, or bars its be-
coming of force.    (*Apthorp v. North*, 14 Mass. 166; *State
v. Fredericks*, 8 Ia. 553; *Marshall v. Hamilton*, 41 Miss.
229.)    Was the signing of these two names on the bond,

under the circumstances of such signing, a material alteration, or even a spoliation? It is not claimed that the defendants had knowledge of this action, or consented to it. It is provided in section 21 of chapter 10, Compiled Statutes: "The county commissioners of any one of the counties of this state may require the county treasurer· to give additional freehold sureties whenever in the opinion of a majority of said commissioners the existing security shall become insufficient, and said commissioners are hereby also authorized and empowered to demand and receive from said county treasurer an additional bond as required by law, with good and sufficient freehold security in such sum as said commissioners or a majority of them may direct, whenever in their opinion more money shall have passed or is about to pass into the hands of said treasurer than is or would be recovered by the penalty in the previous bond, and if any county treasurer shall fail or refuse to give such additional security or bond for and during the time of ten days from and after the day on which said commissioners shall have required said treasurer so to do, his office shall be considered vacant, and another treasurer shall be appointed agreeably to the provisions of law." The board was empowered by this provision to require additional sureties to the bond then in existence, or to demand an additional or new bond to be executed and delivered to them. This provision was of the law at the time the bond was executed, and entered into it, and became a part of the contract evidenced by it, as much and as fully as if it had been of its written terms, hence the order that additional sureties be given was but the exercise by the board of one of their rights authorized by the contract, and the signing by the two additional sureties was not a material alteration of the bond, and certainly not a spoliation. It must be concluded from what has been said on this branch of the case that these parties, being rejected as sureties, never became liable as such. Their names had been signed to the instru-

ment legally or pursuant to authorization by law. The effect of the instrument in suit was not changed; and the bond offered and that declared on in the petition were, in legal effect, the same; and the bond should not have been excluded on the ground or for the reason given for such action. At first glance it might be said that the decision in the case of *Stoner v. Keith County*, 48 Neb. 279, seems to express a doctrine contrary to the views just stated on the subject of the additional names on the bond, but on looking into that case it will be discovered that the additional sureties had been adjudged liable on the bond by the district court. Whether they had been approved or rejected did not appear, and the case was tried in the district court and presented in this court on the theory that such signers had rendered themselves liable, and were so unless certain subsequent occurrences had worked their discharge; and further, that the first signers were released by the addition of the other names was a conceded fact, from all of which it is clear that the subject herein discussed was not then presented or involved.

We will turn now to the answers, and what they established in relation to the bond and its execution. We have hereinbefore stated that there were in them denials of the execution of the bond and of its being of the meaning and effect pleaded in the petition. Notwithstanding these denials, a careful reading of the answers convinces us that there are contained in each of them statements which are admissions of these facts. It is unnecessary to quote from the pleadings in question. Their true import, when they are subjected to a critical inspection, is unmistakable, and fully supports the conclusion which we have just announced. This being true, these questions in regard to the bond, the execution and text of the bond, were not in issue,—were admitted facts, hence it was not error to exclude the bond from evidence.

It remains to consider the other ground of alleged

error,—the giving of the peremptory instruction. This action was but a sequel to the exclusion of the bond from evidence, and followed it as a matter of course; and, as we have seen, the reason which moved the trial court to reject the bond was not a true one, and, if it was all the reason which existed for the court's directing the verdict, the judgment would be reversed; but, if there was anything in the case which, though not assigned as a basis for what the court did, was sufficient to sustain such action, the judgment should not be reversed. There was but one of the main and determinable issuable matters which, at the close of the evidence in chief on behalf of the plaintiff as to proof, was left in such condition as would warrant the action of the court in giving the peremptory direction in regard to the verdict. The one matter to which we refer was in relation to the approval of the bond. It did appear that the bond was filed December 29, 1891; that Scott had qualified, and his oath of office was indorsed on the instrument as filed. These things were done within the time prescribed by law for their doing, but the approval was without the fixed time. It will now be in order to notice particularly some of the provisions of our statute with reference to official bonds, more especially the portions which relate to the approval of such instruments. Section 1 of chapter 10 of the Compiled Statutes provides that all officers designated therein, including county officers, shall, before entering upon their respective duties, take and subscribe an oath of which the form is given, which shall be indorsed on their bonds if the officers are required to give bonds. Section 5 of the chapter is as follows: "Official bonds, with the oath indorsed thereon, shall be filed in the proper office within the times as follows: Of all officers elected at any general election, on or before the first Thursday after the first Tuesday in January next succeeding the election." By section 7 it is provided that all bonds of county officers, except commissioners and supervisors, shall be

approved by the county board, and, except the bonds of the county clerk and members of the county board, shall be filed and recorded in the office of the county clerk. In section 11 it is provided that "the approval of each official bond shall be indorsed upon such bond by the officer approving the same, and no bond shall be filed and recorded until so approved." Section 15 reads as follows: "If any person elected or appointed to any office shall neglect to have his official bond executed and approved as provided by law, and filed for record within the time limited by this act, his office shall thereupon *ipso facto* become vacant, and such vacancy shall thereupon immediately be filled by election or appointment as the law may direct in other cases of vacancy in the same office." Section 17 reads: "When the incumbent of an office is re-elected or reappointed he shall qualify by taking the oath and giving the bond as above directed; but when such officer has had public funds or property in his control, his bond shall not be approved until he has produced and fully accounted for such funds and property; and when it is ascertained that the incumbent of an office holds over by reason of the non-election or non-appointment of a successor, or of the neglect or refusal of the successor to qualify, he shall qualify anew within ten days from the time at which his successor, if elected, should have qualified." Barrett Scott had been treasurer by election for the term of two years immediately prior to the term which the bond in suit was given to entitle him to enter upon and hold. He had been elected for the second term. Of what is required of a re-elected officer in regard to qualifying, giving bond, etc., it was announced by this court in *State v. Lansing*, 46 Neb. 514, that "sections 7, 15, and 17, chapter 10, Compiled Statutes, should be construed together, and when so construed the effect of section 17 is to require one who has been re-elected or reappointed to an office to qualify therefor by taking the oath and filing the bond, where a bond is required, in the same

manner and within the same time as one for first time elected." Section 15, herein quoted, was construed in that decision and by its requirements relative to execution, approval, and filing official bonds was held to create a condition precedent to the right of a person elected or appointed to be inducted into office; and the provision was also held to be self-executing and on failure of compliance therewith by the elected or appointed person, the right to the office was extinguished or lost, and the office vacant and subject to be at once either filled by appointment or election as by law in each case provided. The decision in that case, also that in *McMillin v. Richards*, 45 Neb. 786, *State v. Cosgrove*, 34 Neb. 386, and *State v. Lynn*, 31 Neb. 770, are cited as establishing that the bond of an officer has no force or validity unless approved by the person or persons and in the manner prescribed by law, in any and all cases where approval is required. Whatever may be our ultimate conclusion relative to the exact question herein involved and for discussion, we cannot agree that the cases last referred to reached the length claimed. The cases of the *State v. Lansing*, *State v. Cosgrove*, and *State v. Lynn* were all applications for writs of quo warranto, the object aimed at in each case being to oust a party from an office, and, in such cases, the party whose right to hold the office is attacked, in order to retain the office, must show strict compliance with the conditions precedent required to entitle him to enter upon and hold the office. All such cases are distinguishable from actions on official bonds. As was well stated in *State v. Lansing*, 46 Neb. 522: "Actions upon bonds given out of time and direct proceedings to oust an officer for failing to qualify according to law present very different questions for consideration." And on page 520: "There is another class of cases which were suits on official bonds tendered and approved after the statutory time. The best considered of these cases hold the bond valid, not because the statute fixing the time was directory merely, but because the officer became a *de facto* offi-

cer or because the officer and his sureties were estopped from asserting the invalidity of the bond, they having tendered it and it having been accepted, and the officer having acted under it." The case of *McMillin v. Richards, supra*, was an action by the plaintiff to recover the fees and emoluments of the office of county treasurer of a county in this state, which it was claimed had been received by the defendant during his incumbency of said office as treasurer *de facto*. It was therein held that the plaintiff, in order to recover, must have proved that he possessed the full legal title to the office, had fulfilled all the requirements of the law necessary to constitute him on officer *de jure*. That case clearly presented different questions governed by different reasons and principles than appear in an action like the case at bar on an official bond.

The direct question to which our attention will now be given is, did the bond in suit, by reason of its non-approval within the time prescribed by statute, remain inoperative, and never become of any force or effect? If so, the obligation of the sureties had no life, did not charge them, and the peremptory instruction to the jury was correct. We will here again call to notice the rule that, when these parties defendant herein signed this bond as sureties, they did it, or it must be presumed or considered that they acted, in contemplation of all the laws then existing which were applicable to and governing transactions of the nature of the one in hand, and with knowledge that all such laws and rules of law entered into and became a part of the contract, which, by the signing, they indorsed as their agreement.

Turning now to some of the regulations prescribed by the statutory law in regard to official bonds, and to which we have hereinbefore called attention, in what position does a fair and reasonable construction and enforcement of them place these defendants? Section 15 clearly makes it the duty of the prospective officer to have his bond approved and filed. His neglect to per-

form these duties operates his forfeiture of the right to claim or hold the office. It cannot, by any process of true reasoning, be said to apply to the bond, and render it any the less effective or operative, if it ever became so. The latter was not its intention, and is not of its import. It was not intended to and does no more than prescribe what shall be done by the prospective officer, and assign the results of a neglect on his part to do what is required. The other sections to which we have hereinbefore referred, in relation to approval of the bond, are of the duties of certain of the county officers, and doubtless of the ones to whom it is allotted that they shall approve such bonds as the one in suit; also of the officer whose duty it was to file and record it after its approval; it may be said that they were derelict in the performance of their duties, or the bond would not be in its present condition; but can or does the fact that they were negligent, render the obligation signed by the sureties of none avail where it has been delivered, and the principal has assumed the office, the proper and faithful performance of the duties of which it was designed to secure? We think not. These provisions relative to approval of the bond were not for the benefit of the sureties of bonds, but for the convenience and better security of the public and the parties who may be directly interested. The sureties had signed the bond and delivered it to the principal therein for the purpose for which it was used, and they have no reasonable or tenable ground for complaint in that some matters which were not of their concern, or not to be exercised in their behalf, were neglected and not observed. Nor do we think, by adopting this view, we do not administer the law with fairness and with as nearly equal justice to all as may be. The sureties executed the bond and gave it to the principal to be delivered to the county, by which act he was to obtain and hold possession of the office, and receive and enjoy its fees and emoluments. The principal delivered the bond, neglecting a prescribed duty,—that of procur-

ing it to be approved. He took possession of the office and received and enjoyed its fees and privileges, and it is asserted much more. Whether the last is true or not, we, in the present hearing, have no concern, and need not definitely determine or discuss. To hold that the bond became of effect on its delivery and the assumption of the office by its principal signer, is to do no more than enforce the contract, to require of the sureties what they had in contemplation when they executed and gave the bond to their principal, and by so holding we but do justice to the other party to the bond,—the public, nominally the county. It certainly seems right and consistent with fairness to adopt the course which will be just to all and inflict no injustice on any.

Our conclusion is not new or novel, or unsupported by the opinions of other courts and of text writers. Provisions which require the approval of official bonds are for the benefit of the obligee who alone can take advantage of a failure to observe them. Such failure is never ground upon which the obligor or his sureties can escape liability after a breach of the conditions of a bond. (4 Am. & Eng. Ency. Law [2d ed.] 669; Murfree, Official Bonds sec. 48; Mechem, Public Officers sec. 313.) "Approval being thus for the protection of the public only, it is well settled that where, by virtue of the bond, the officer has been inducted to the office his sureties cannot escape liability for his defaults because the bond was not approved by the proper officer, or was not approved at all." The case of *People v. Johr*, 22 Mich. 462, was an action against Johr and his sureties on his bond as treasurer of a county in Michigan to recover damages for alleged breach of the bond in not accounting for and paying over moneys received for sales of lands for taxes. The law required the execution and approval of the bond as conditions precedent to the officer's right to make the sales. The bond, as in the case at bar, was excluded from the consideration of the jury in that case for the reason that it was not executed and approved as re-

quired by statute.   In the opinion in the supreme court on error it was said: "It is doubtless true that, without the approval of the prosecuting attorney and the other circuit court commissioner, the auditor general might have refused the bond, and declined to allow the county treasurer to make the tax sales, and it may be admitted that, as between the auditor general and the people, it was his duty to have done so, and to have appointed another person to make the sales.   But the precise question here is whether the county treasurer, who, on the faith of this bond, was allowed to make the sale and receive the money, or his sureties, can now be heard to make the objection that the bond executed by them and accepted and received by the auditor general as and for the bond required by the statute, and on the faith of which he has allowed the treasurer to sell the lands and receive the money, was not approved by all the officers whose approval it was the duty of the treasurer to have obtained.   For whose benefit, and for what purpose, did the statute require the approval by the officers mentioned?   Certainly not for the benefit or protection of the county treasurer or his sureties, but solely for the security and protection of the public, that the state might not be in danger of losing the public funds by insufficient sureties.   And, after the county treasurer and his sureties have had all the benefits they could possibly have enjoyed had the approval been obtained, it is not for his sureties even—much less for him—to object that the state or its officers should have exercised more caution in ascertaining their sufficiency as sureties; for this, upon final analysis, is the whole force of the objection, the bond itself, in all its provisions, being in strict compliance with the statute.   Such, we think, must be the result both upon logical and legal principles.   It is so well settled as long ago to have become a maxim of law, that any one may waive the benefit of a provision of a law, or a contract introduced for his own benefit. *   *   *   And though, as between the people of the

state and the auditor general, the latter may have had no right to waive the required approval of the sureties in this case, yet, when the people in their corporate capacity sue upon the bond, under the circumstances of this case, there is no principle of justice or common sense, and we are aware of no principle of law, which prohibits them, so far as the defendants are concerned, from waiving the approval, or which can give the defendants the right to insist upon it for the purpose of defeating their liability. * * * We think, therefore, the bond in this case, as between the people and the defendants, is to be treated in all respects as a statute bond, and that the circuit court erred in excluding it from the jury." (See also *McCracken v. Todd*, 1 Kan. 148; *Auditor v. Woodruff*, 2 Ark. 79; *Marshall v. Hamilton*, 41 Miss. 229; *Stevens v. Treasurers*, 2 McCord [S. Car.] 67; *People v. Edwards*, 9 Cal. 286; *Sprowl v. Lawrence*, 33 Ala. 674; *Jones v. State*, 7 Mo. 46; *Apthorp v. North*, 14 Mass. 166; *State v. Fredericks*, 8 Ia. 553; *Boone County v. Jones*, 54 Ia. 699; *Mendocino County v. Morris*, 32 Cal. 145; *State v. Hampton*, 14 La. Ann. 736; *Young v. State*, 7 Gill & J. [Md.] 253; *Dutton v. Kelsey*, 2 Wend. [N. Y.] 615; *Skelinger v. Yendes*, 12 Wend. [N. Y.] 306; *Ring v. Gibbs*, 26 Wend. [N. Y.] 502.) Some of the cases cited may not be in all respects entirely in point, but such as are not support the doctrine. It may be said, if we give full force to the decision in *State v. Lansing, supra*, that Barrett Scott did not possess a full indefeasible title to the office, since his bond had not been approved. If this be conceded, he was a *de facto* officer, demanded, obtained, and held the office by reason of his election thereto. He was not a mere intruder, but was acting under color of right, and in this action his sureties are estopped. They cannot be heard to assert that he was no officer. In *Jones v. Scanland*, 6 Humph. [Tenn.] 195,—an action upon an official bond,— it was said: "Although the election of a person as sheriff was void, and his induction into office illegal by reason of his having then been a defaulter to the treas-

ury, and he did not thereby become sheriff *de jure*, yet he became sheriff *de facto*, and those who voluntarily bound themselves for the faithful performance of his duties, as sureties, cannot absolve themselves from their obligation by insisting that he was no sheriff." In the case of *State v. Rhoades*, 6 Nev. 352, it was announced: "Where a state treasurer, re-elected in 1866, accepted a new commission, and took a new oath, and continued to discharge the duties of the office, but failed to file a new official bond within the time prescribed by law, held, that he was an officer *de facto*, and holding as of the new term; and that the sureties on the new bond afterwards filed were estopped from denying that he was holding as of the new term *de jure*. * * * A person discharging the duties of a public office under color of right is an officer *de facto* and not a mere intruder. * * * Where a person discharges the duties of an office as an officer *de facto* and not as a mere intruder he and his sureties are estopped by the recitals in his official bond from denying that he is entitled to the office." After quoting at length from a number of authorities, it is said in the opinion: "These authorities are squarely opposed to the ground taken here that the failure to execute the bond within the statutory time released the sureties. They have precluded themselves from saying that the person for the faithful discharge of whose official acts they became sureties was not of right entitled to perform such acts. The authorities cited on behalf of defendants are not adverse to this conclusion. It will be found upon examination, either that the person for whom the bond was given was a mere intruder, not deemed an officer *de facto*, and consequently not estopped from showing that he was not an officer either in fact or of right, or where the bond was given under circumstances rendering it utterly null, but still free from all elements estopping the parties to it from showing such to be the case. Bonds like this are sustained upon a strong current of authorities holding that a per-

son being an officer *de facto* is not permitted to show or rely upon the fact that he was not an officer *de jure*, for the purpose of attacking or setting aside anything which he may have done in his official capacity. And upon like reason his sureties are also estopped. Where there is no element of estoppel, or the reason for the rule does not exist, of course it should not be applied. The absence of the circumstances constituting an estoppel is the distinguishing feature between the cases cited for the defendants and those sustaining the conclusion at which we have arrived." (See also *Green v. Wardwell*, 17 Ill. 278; *City of Chicago v. Gage*, 95 Ill. 625; *Nunn v. Goodlett*, 10 Ark. 89; *Stevens v. Treasurers*, 2 McCord [S. Car.] 67; *Boone County v. Jones*, 54 Ia. 699; *Plymouth v. Painter*, 17 Conn. 585; *Pier County v. Hannam*, 3 Barn. & Ald. [Eng.] 266; *Bucknam v. Ruggles*, 15 Mass. 180; *People v. Collins*, 7 Johns. [N. Y.] 549; *Monteith v. Commonwealth*, 15 Grat. [Va.] 172; *State v. Bates*, 36 Vt. 387; *Town of Lyndon v. Miller*, 36 Vt. 329; *Marshall v. Hamilton*, 41 Miss. 229; *Norris v. State*, 22 Ark. 524; *People v. Jenkins*, 17 Cal. 500; *People v. Slocum*, 1 Ida. 62; *Ford v. Clough*, 8 Me. 334; *Reed v. Hedges*, 16 W. Va. 194.) For decisions of this court in which the doctrine of estoppel is recognized and held applicable to sureties on bonds see *Gudtner v. Kirkpatrick*, 14 Neb. 347; *Adams v. Thompson*, 18 Neb. 541; *Dunterman v. Storey*, 40 Neb. 447; *Flannagan v. Cleveland*, 44 Neb. 58.

In the case of *Cutler v. Roberts*, 7 Neb. 4, it was held: "A statutory bond must conform substantially to the requirements of the statutes in respect to its penalty, conditions, form, and number of sureties. The statute in such case enters into and forms a part of the contract, and a surety may insist, as a defense in an action on such a bond, signed by but one surety where two are required, that he is not liable thereon, the bond not being perfect on its face, unless he waive the defect." The facts of the case were, in substance, as follows: A judgment in an action on a promissory note was rendered

against one John Rouse. In an effort to stay an execution of the judgment, the debtor procured a bond to be signed by one surety who, when he signed it, told Rouse that the law required two sureties on such a bond. Rouse promised to get the signature of another surety on the bond but did not do so. He sent the bond to the probate judge before whom the judgment had been obtained, who, on its receipt, did not approve it, but marked it filed of the date received. An execution was procured to issue for the enforcement of the judgment and levied on property of the debtor, and in an action to restrain the officer from selling the property, the doctrine, a statement of which we have quoted, was announced. The law in force then in regard to stay bonds was as follows: "On all judgments for the recovery of money only, except those rendered in any court on appeal or writ of error thereto, or against any officer or person or corporation or the sureties of any of them, for money received in a fiduciary capacity, or for the breach of any official duty, there may be stay of execution, if the defendant therein shall, within twenty days from the rendition of judgment, procure two or more sufficient freehold sureties to enter into a bond, acknowledging themselves security for the defendant for the payment of the judgment, interest, and costs," etc. The court stated in its opinion written by MAXWELL, J.: "The law in such a case enters into and forms a part of the contract, and a surety may insist as a defense, in an action on a bond signed by but one surety, that he is not liable thereon, the statute being notice to all parties concerned that two sureties were required, unless the surety waived the condition prescribed by the statute,"—from which it appears that the decision was in part, at least, based on the ground that the provision of the statute, by which two sureties were required to make the instrument a statutory bond, was one for the protection and benefit of a surety thereon and with which he could demand a compliance. The case is not an authority which can govern or influence

in a determination of the questions in the case at bar, for reasons: First, the provision herein invoked by the sureties relative to approval of bonds is not designed for the security or benefit of a surety or the sureties, as was the one involved in that case. Second, in the case at bar the purposes for which the bond was executed and delivered were accomplished; hence the consideration passed. In that case, from the very nature of the object sought to be attained by the execution and delivery of the bond, it could not be effected by the bond as filed, nor could its filing produce or induce such conditions as would work an estoppel of the surety to plead or assert the nonoperativeness of the bond. The fact that the bond under consideration in the case of *Cutler v. Roberts* was never approved was not noticed further than to merely state it in the opinion, and it was not an element of the basis for the decision. In the case of *United States v. Maurice*, 2 Brock [U. S.] 96,—an action on an official bond decided by Chief Justice Marshall as circuit judge, —which, while probably not strictly in point in the case at bar, is quite so, and supports the rules herein announced, there will be found some very instructive and wholesome reading on the subjects herein involved.

There is another branch of the question which we think deserves notice. It may be urged that, as there was no approval of the bond in time, there was no acceptance of it by the county, hence it is not binding on the sureties. This is not tenable. The law contemplates that the officer will have the bond approved and afterward filed and recorded. If he secured its approval, and did not file it or deliver it, it would be no more binding because of the approval than it would without it. The approval does not work the acceptance of the bond. It purports to evidence an investigation by the proper person or persons into the reliability and responsibility of the signers of the bond, and the other matters as to which an examination usually does, and always should, precede the approval; and if the bond is approved, this

fact also shows that the investigation has disclosed every-thing to be satisfactory, but the approval does not con-stitute or evidence a delivery and an acceptance.

There is another argument which might be urged as establishing the validity and potency of the bond in suit, viz., that, when filed in time, as was this one, a later approval relates back to the time of filing, and will be considered as done of that date.  This is on the ground that where there are several acts which may be said to be concurrent, required to be done to make or complete a matter or thing, then the dominant act in this case,—the delivery,—shall be preferred, and to it the other acts have relation.  Supporting this doctrine are *State v. Tool*, 4 O. St. 553; *Drew v. Morrill*, 62 N. H. 23.  This point was not discussed by counsel and as to whether it should prevail or not, we will merely indulge in a query; but if there ever were cases in which the doc-trine of relation should be invoked and apply, it is proba-bly in actions of the nature of this.

It follows from the conclusions herein stated that the sureties were not entitled to the peremptory instruction. It should not have been given.  The judgment must be reversed and the cause remanded.

REVERSED AND REMANDED.

IRVINE, C., dissenting.

While concurring for the most part in the opinion of the court, I cannot concur in the conclusion that the bond sued on became operative, and desire, as briefly as possible, to express my views on the two principal points on which the court bases that conclusion.  I understand the court to hold, in the first place, that the approval of an official bond, at least within the time limited by law, is not essential to the consummation of the contract be-tween the obligors and the public; and, in the second place, that because Scott was suffered to assume the duties and receive the emoluments of the office, and be-

came a *de facto* officer, the sureties are estopped to deny his title to the office.

It is not, in my opinion, necessary to consider whether, under any circumstances, an official bond can become operative until it has been approved. Many cases, it is true, proceed upon the theory adopted in the opinion of the court, that provisions for approval are solely for the benefit of the public, and may be waived, and that therefore the sureties cannot set up a want of approval as a defense. On the other hand other cases hold that where an approval is required, it is the act, or one of the acts, designated by law as requisite to an acceptance, and that in the absence of approval there has been no acceptance and therefore no technical delivery. (*United States v. Le Baron*, 19 How. [U. S.] 73; *Bruce v. State*, 11 Gill & J. [Md.] 382; *State v. Jarrett*, 17 Md. 310; *Crawford v. Meredith*, 6 Ga. 552; *Commonwealth v. Yarborough*, 2 S. W. Rep. [Ky.] 68; *Commonwealth v. Magoffin*, 25 S. W. Rep. [Ky.] 599.) It may be added that every utterance of this court in the past, and several have been very direct and emphatic, favors this view. (*State v. Lynn*, 31 Neb. 770; *State v. Cosgrove*, 34 Neb. 386; *McMillan v. Richards*, 45 Neb. 786.) However, treating that as an open question, or as one which should be resolved in favor of the county's contention, it must be conceded that by force of our statutes the approval of the bond within the time limited is essential to entitle the person elected or appointed to enter upon the office. The cases last cited certainly are authority for that statement, and the case of *State v. Lansing*, 46 Neb. 514, is absolutely conclusive of the question. So long as that case stands without being expressly overruled there can be no doubt on the subject. The opinion of the court recognizes this principle, and thereby admits that Scott lost all title to the office when the Thursday after the first Tuesday in January passed without an approval of the bond. Scott nevertheless remained for ten days a *de jure* officer, holding over under his first election because his successor had

not qualified, and then lost even that title through his failure to requalify under the tenure so acquired. (*State v. Cosgrove, supra.*) Thereafter he was at most a *de facto* officer. It follows that he never occupied the office under his election, by virtue of the right acquired by that election, or for the term contemplated by that election. Being already in office he there remained, solely because the county board neglected to perform its duty by choosing his successor, and subject to be by that board at any minute summarily ousted. The bond had been by the sureties executed in due season, and had by Scott been presented to the county authorities in due season. This is an important and perhaps a controlling fact, the legal effect of which the opinion of the court entirely ignores. The bond contained no recitals except that Scott had been elected for the term mentioned, and its condition is for the faithful performance of the duties of the office. It contemplates that he should hold the office under the election recited, and for the term fixed by law, that he should, in a word, hold as treasurer *de jure*, as it was practicable for him to do when the bond was made. It was not conditioned for his good conduct as an officer holding over his former term, or as a *de facto* officer by sufferance of the county board. (*Winneshiek County v. Maynard*, 44 Ia. 15.) It was given for one purpose, and by the opinion of the court it is made to bind the sureties for an entirely different purpose. The condition of the bond, when read in the light of the facts existing when it was executed, and of the law, was that Scott should faithfully discharge the duties of his office as the county treasurer of Holt county elected for the term of two years beginning the Thursday after the first Tuesday in January, 1892. The court holds the sureties liable upon a bond conditioned for the faithful discharge of the duties of county treasurer, provided the county board should wrongfully suffer him to remain in office, or if by hook or crook he could manage to remain there. It will not do to say that the end in view was his acting

as county treasurer, and that it made no difference by what right or in what absence of right he so acted. The sureties are entitled to have their contract construed as it is and not as the court may think they would, under other circumstances, have been willing to make it. Moreover it by no means follows, because a man is willing to become surety for the acts of a *de jure* officer, that he is willing to stand responsible for the acts of one who intrudes himself into an office and may at any moment be unceremoniously evicted,—one charged with all the burdens of a *de jure* officer, but entitled to none of his rights. I think the bond is void, not directly for the reason that it was not approved in time, but because for that reason Scott lost all title to the office, and the event never occurred whereby, according to the terms of the contract and the contemplation of the parties, it was to be rendered operative.

Passing now to the other point referred to, the supposed estoppel of the sureties, I cannot see upon what fact that estoppel can be predicated. If the bond had recited facts inconsistent with the averment of Scott's forfeiture of the office, then an estoppel would arise by deed. If there were any covenant on the subject a liability might arise thereon. If the sureties, after Scott lost his right to office, had done any act furthering his claim or inducing the county to admit him into or retain him in office, an estoppel might arise *en pais*. But there was, as already said, no recital in the bond except of Scott's election, and the sureties are not seeking to controvert that fact. There was no covenant binding them for anything but a lawful holding. No fact had occurred when they signed the bond or when it was presented to the county, whereby Scott's right had been defeated or impaired. After the act of forfeiture they did no act recognizing his continued right or inducing the county to recognize it. I can understand that the defendants would be estopped to assert any fact contrary to recitals or covenants contained in the bond, and I can understand

that they might be estopped, even in the absence of express recitals, to assert any defect in Scott's title existing at the time the bond was signed or presented. So if the bond had been presented after the time limited by law for Scott's qualification it may be that the sureties could not thereafter allege the forfeiture of right as a defense, at least if the facts creating the forfeiture were known to them, or if Scott had been permitted to enter upon the office in reliance upon the waiver of the irregularity by the defendants. But to create an estoppel by deed there must be some recital or covenant contrary to the fact which it is sought to establish by proof; and to create an estoppel *en pais* there must have been some act or omission of duty, in reliance whereon the other party has altered his position to his disadvantage, so that it would be inequitable to permit the fact to be shown. In this case there is not the semblance of any one of these essential elements. The court, on the other hand, seems to raise the estoppel from the fact that after the defendants had in good faith presented the bond for a timely approval, the county board neglected its duty and permitted Scott to wrongfully hold office; to raise it from facts occurring after the sureties had done all their part in making the contract, and facts in which they had no part and over which they had no control. The judgment of the court, it seems to me, substitutes for the contract of the parties one made for them without their consent or authority by other persons. It holds them liable, not for the misconduct of Scott as an elected treasurer, but for his misconduct as an intruder, and in effect adds to that liability a responsibility for the negligence of the county board. Finally, it estops them by recitals and covenants they did not make, and by facts not only unknown to them but nonexistent at the time of the contract and created by the adverse party and not by them.

RYAN and RAGAN, CC., concur in the foregoing dissenting opinion.