SAMUEL PATTERSON, APPELLANT, V. STATE OF NEBRASKA, APPELLEE.

FILED JANUARY 16, 1913.    No. 17,637.

1. **Officers: DE FACTO OFFICERS.** Where a person who has been appointed to an office qualifies for the position, assumes the duties of the office, is actually engaged in the discharge of its functions under color and claim of right to the office, acquiesced in by the

public during all of the time of his occupancy, such officer will at least be deemed and held to be a *de facto* officer. *Dredla v. Baache*, 60 Neb. 655.

2. ———: CLAIMANTS: RIGHT TO COMPENSATION. Where a *de facto* officer has discharged all the duties of a state office, has been recognized by the state accounting officers as properly and legally holding the office, paid the salary for the full time out of an appropriation made for that purpose, thus exhausting the fund, a claimant of the office who discharged none of its duties cannot, after the expiration of the term, enforce the payment to himself of the salary from the state. The fact that the claimant was deprived of the right to the office by an injunction wrongfully issued out of the circuit court of the United States, and which was subsequently set aside by the supreme court of the United States on appeal, would not affect the rights of the state in an action by the claimant to recover the salary, the same having been paid to the person who performed all the duties of the office under a claim of right, and whose incumbency was acquiesced in by the state officers and the public.

3. ———: QUALIFICATION: SECRETARY STATE BANKING BOARD. The law requires the secretary of the state banking board to give an official bond for the faithful performance of the duties of the office. The giving and depositing of the bond in the office of the secretary of state is a prerequisite to the holding of the office and the discharge of its duties. Where an appointee to such office executes his bond, files it with the secretary of state, but later withdraws it, leaving no bond in its stead, and discharges none of the duties of the office, he is not entitled to the salary, another having discharged all the official duties under a claim of right and having been recognized by the state and the public as such officer, the salary having been paid to him by the accounting and disbursing officers of the state.

4. States: SALARIES OF OFFICERS: PAYMENT. The state pays a salary but once, if paid through the regular channels provided by law for the payment thereof, and by which the appropriation for that purpose is exhausted.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed*.

*Matthew Gering,* for appellant.

*Grant G. Martin, Attorney General, George W. Ayres* and *Frank E. Edgerton, contra.*

REESE, C. J.

In the year 1909 the legislature of this state passed what is popularly known as the "Bank Guaranty Law." Laws 1909, ch. 10. Under the authority and provisions of that law, the governor appointed plaintiff to the office of secretary of the state banking board. The salary of that office was fixed by the act at $3,000 a year. The appointment was made after the passage and approval of the act, but before it became effective; there being no emergency clause contained in the bill. Plaintiff accepted the appointment, took the required oath, and executed a personal official bond, which was delivered to the governor. Later he withdrew that bond, and caused a bond issued by an indemnity company to be filed in its stead. It being contended that the guaranty law was unconstitutional and void, a suit was instituted in the United States circuit court for the district of Nebraska by one of the banks in this state, the purpose of which was to enjoin the enforcement of the law. The governor, the state banking board and plaintiff were made parties defendant in that suit. Such proceedings were had as resulted in a final decree perpetually enjoining the defendants therein from enforcing or attempting to enforce the provisions of the law. From that decree the state took an appeal to the supreme court of the United States, where the case was heard, and on the 3d day of January, 1911, a decree was entered finding the act valid and reversing the decree of the circuit court. Prior to the institution of that suit, and under the provisions of the law then in force, Edward Royce was duly appointed the secretary of the state banking board, and entered upon the duties of the office and continued to act until after the decision of the supreme court of the United States was rendered, when he was appointed the secretary under the provisions of the new law, and which office he still holds. The session of the legislature which enacted the guaranty law appropriated the sum of $3,000 a year for and during

the succeeding biennium, making a total of $6,000, to pay the salary of the secretary of the state banking board. Royce continued to act during the whole time, and the accounting and auditing officers of the state allowed and the auditor issued the necessary warrants for the payment of the salary until at the end of the two years, when the appropriation was exhausted, the warrants having been paid as issued. Plaintiff withdrew his official bond, leaving nothing in its stead, and engaged in the banking business on his own account, and paid no further attention to. the matter, and never at any time devoted any time or attention to the duties of the office. Under the provisions of the constitution, the bank guaranty law took effect and became of force on the 7th day of July, 1909. On the 30th day of March, 1911, Royce was again appointed secretary of the banking board, and which appointment we understand is conceded to be a legal and valid appointment. Counting from the time the law went into force until this appointment, there was one year 8 months and 23 days during which time plaintiff claims he was unjustly deprived of the office. He filed his claim with the auditor demanding the full two years' salary from July 7, 1909, to July 7, 1911, making a total of $6,000. The claim filed with t' auditor was an elaborate statement of the facts upon which it was based, and on the hearing a number of alleged proofs and documents were presented. The auditor disallowed the claim, when the case was taken to the district court for Lancaster county, where voluminous pleadings were filed, and upon a trial the claim was again disallowed. The cause is now in this court on appeal from that decision.

The case is presented upon unusually well and carefully prepared briefs. It is conceded that plaintiff rendered no service to the state. It is also conceded that, after filing his official bond, he thereafter withdrew it from its legal custodian and surrendered it to the indemnity company, causing it to be canceled, and left nothing in its stead, the withdrawal, surrender and can-

celation having occurred on or about December 7, 1909, and it is conceded that the bond cost plaintiff nothing.

The guaranty law, under which plaintiff's appointment was made, requires that the secretary give an official bond in the sum of $25,000. Without such bond he was not entitled to and could not hold the office, nor legally dis-charge its functions. *Rounds v. City of Bangor*, 46 Me. 541; *Foster v. Justices of the Inferior Court*, 9 Ga. 185; 23 Am. & Eng. Ency. Law (2d ed.) 354; 29 Cyc. 1387; *State v. Paxton*, 65 Neb. 110; *State v. Lansing*, 46 Neb. 514, 35 L. R. A. 124; *Holt County v. Scott*, 53 Neb. 176. It is provided in section 6, ch. 8, Comp. St. 1911, that the secretary, etc., "shall each enter into a bond, to the state of Nebraska, before taking their respective offices, with surety or sureties to be approved by the governor" in the sum of $25,000. Not only did he withdraw the bond, but he devoted himself to his own banking business, evidently giving the affairs of the office no thought or attention.

It is claimed by the defense that the cancelation and withdrawal of the bond was such an act as would effect-ually deprive plaintiff of the right to any claim for the salary, irrespective of all other grounds upon which he might have based his demand. It is argued, in substance, that, had every impediment to the discharge of the duties of the office been removed after the cancelation and with-drawal of his bond, plaintiff could not have entered into the office without a requalification, and, as that never oc-curred, he is in no condition to demand the payment of the salary, even had the office otherwise been vacant and no one discharging its duties. While this contention might be entitled to consideration, we are not inclined to dispose of the case upon that ground alone.

It is contended by plaintiff that, having qualified and fully prepared himself for taking charge of the office, he thereby became the secretary *de jure;* that the order of injunction issued by the circuit court could not change his *status;* and that he so continued until the final ap-pointment of his successor, the injunction having been can-

celed and nullified by the judgment of the supreme court of the United States. While this may or may not be true, it cannot be held that the official action of the incumbent was void, nor that of the state accounting officers in paying him for the service rendered. If his acts were valid, he certainly was, to say the least, a *de facto* officer. As to whether Royce was a *de jure* or a *de facto* officer is not to our minds an important question here, for the reason that he did hold the office, did discharge the duties thereof, held under a former appointment under the former law, it is true, but the same office was continued, was recognized by the state officers as the secretary, was paid by them, and the appropriation made for that purpose exhausted. Whether the new law was constitutional or not, the office of secretary of the state banking board was continued—all the time in existence—and the demand for some one to discharge its duties was imperative. The injunction prevented plaintiff from doing so. It also prevented the governor from appointing another. If the new law was void, Royce was the *de jure* secretary. If it was valid, the office of secretary was continued with him as the incumbent in fact, and, his acts being valid, he was the *de facto* officer. The state pays a salary but once. The money is appropriated by the legislature for that specific purpose and could be used for no other. "One who holds and performs the duties of an office and receives the fees and emoluments thereof by virtue of an election or appointment thereto or under color of right, is a *de facto* officer and not a mere intruder." *Holt County v. Scott,* 53 Neb. 176.

In *Dredla v. Baache,* 60 Neb. 655, the question was presented as to the legality of the orders and proceedings of an acting county judge; it being contended that his acts were wholly void from want of authority to exercise the functions of the office. In the opinion by HOLCOMB, J., at page 662, we said: "Whether Wurzburg was a *de jure* or a *de facto* officer, it is unnecessary here to determine. A discussion of the distinction between the two

would be wholly without profit. We may assume that the only question is whether his acts while occupying the position he did are wholly void and unauthorized, or are valid as a *de facto* officer. It is apparent that he was actually engaged in the discharge of the duties of the office during the period mentioned under color of authority by reason of his appointment by the county commissioners and qualification thereunder; that he exercised the functions of the office under color of right and claim thereto, and that such right and authority were acknowledged and acquiesced in by the public and all those dealing with the affairs of the office during the whole period of his incumbency. To constitute a *de facto* officer it is only necessary that he have some appearance of right to the office which would lead the public without inquiry to suppose him to be the officer he assumes to be. Where a person is in the actual possession of an office, in the discharge of the official duties thereof under such color or claim of right to the office, he will be deemed and held to be a *de facto* officer."

In *Haskell v. Dutton,* 65 Neb. 274, the officer was the deputy clerk of the district court, under verbal appointment, without having complied with any of the provisions of the law relative to official bonds and oaths, but had acted in the capacity for a year or more. On deciding the case as to the legality of his acts, we said, SULLIVAN, C. J., writing the opinion: The deputy, "according to the narrowest definition of the term, was a *de facto* officer, and his acts, so far as they affected the parties to the suit, were just as binding and efficacious as they would have been if all the conditions necessary to make him a *de jure* officer had been fulfilled"—citing cases, and quoting from *Norton v. Shelby County,* 118 U. S. 425, wherein it was said by Justice Field: "Where an office exists under the law, it matters not how the appointment of the incumbent is made, so far as the validity of his acts are concerned. It is enough that he is clothed with the in-

signia of the office, and exercises its powers and functions."

Applying these rules to the incumbency of Royce, it is clear that, to say the very least, he was a *de facto* officer, and that the payment to him of the salary, which he had earned, out of the appropriation, thus exhausting it, was a legal payment, and that the state officers would not be justified in paying it again to plaintiff, who had discharged none of the duties of the office.

It follows that the judgment of the district court must be, and is,

AFFIRMED.

SEDGWICK, J., concurs in the conclusion.

ROSE, J., concurring in part.

Plaintiff withdrew his official bond early in the term for which he was appointed. Afterward, his status was the same as if his appointment had never been made, since he did not in fact occupy the office at any time or perform any of the duties thereof. The claim he presented to the auditor of public accounts was a single demand for a warrant for $6,000—the entire statutory compensation appropriated by the legislature for the full term. The allowance of the claim in its entirety was the question presented. In disallowing it, the auditor and the trial court did not err. For these reasons alone, I concur in the affirmance, but express no opinion on other questions discussed by the chief justice.